IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION
CASE NO.:

KDH ARCHITECTURE INC.
a/a/o 921 EVERGREEN DRIVE
AND 730 WHITEMORE, LLC,

     Plaintiff,

vs.

WESTERN WORLD INSURANCE
COMPANY,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, KDH Architecture Inc. a/a/o 921 Evergreen Drive and 730 Whitemore, LLC, by

and through the undersigned attorney, sues the Defendant, Western World Insurance Company,

and alleges as follows:

## GENERAL ALLEGATIONS

    1.    This is an action for damages for greater than $15,000.00, exclusive of interest,

costs, and attorney's fees.

    2.    At all times material hereto, Plaintiff was and is a Florida corporation with principal

place of business in PALM BEACH County, Florida.

    3.    At all times material hereto, Western World Insurance Company was and is a

corporation duly licensed to transact business in the State of Florida and does business, has offices,

and/or maintains agents for the transaction of its customary business in PALM BEACH County,

Florida.

**EXHIBIT**

**1**

ILG File #: 11984
Claim #: 137081
Case #: **_____**

4.      At all material times hereto, Insured ("Insured/Assignor") owned the property insured by Defendant located at 921 Evergreen Drive, Lake Park , Florida 33403 (the "Property").

5.      The policy of insurance written and issued by Defendant, Western World Insurance Company, was issued to the insured in PALM BEACH County, Florida.

6.      Jurisdiction and venue are proper in PALM BEACH County, Florida.

7.      In consideration for the premiums paid to it, prior to December 15, 2017, Defendant issued an insurance policy, number NPP8357671, to the Insured for the Insured's property located at 921 Evergreen Drive, Lake Park , Florida 33403 in PALM BEACH County, Florida (the "Policy").  A true and correct copy of the Policy is not in the possession of Plaintiff, but is in the care, custody, and control of Defendant.  The Policy will be produced during discovery and will be filed by Plaintiff after receipt from the Defendant.

8.      Defendant's Policy is an "all risk" policy that covers all direct physical losses to the Property that are not otherwise expressly excluded.

9.      The Policy issued by Defendant provided coverage for the dwelling and for architectural services necessary to restore the property to its pre-loss condition.

10.      At all times material hereto, including on December 15, 2017, the date of loss, the Policy was in full force and effect.

11.      All conditions precedent to obtaining payment of said benefits under the policy have been complied with, met, or waived.

## COUNT I – BREACH OF CONTRACT

12.      Plaintiff brings this action based upon an *after-loss* assignment of insurance proceeds by the Insured ("Insured/Assignor") to the Plaintiff.  *See copy of the assignment attached hereto and incorporated herein as Exhibit "A."*

13.     On or about December 15, 2017, Insured/Assignor's property was damaged by a covered loss (the "Loss").

14.     Plaintiff and/or Insured/Assignor gave timely notice of the Loss and resulting damage to Defendant and/or its authorized agents, employees, or representatives.

15.     Defendant responded to the Loss by assigning claim number 137081 (the "Claim").

16.     The property damage sustained on or about December 15, 2017 required architectural services in relation to all damaged building elements, including but not limited to structural, electrical, mechanical, and/or other damaged elements.

17.     Plaintiff provided necessary architectural services for the Insured/Assignor's Property in relation to all damaged building elements, including but not limited to structural, electrical, mechanical and/or other damaged elements, and in exchange, Insured/Assignor agreed to assign his/her right to be paid for the services rendered by Plaintiff in accordance with Plaintiff's Invoice. *See Exhibit "A."*

18.     The Assignment was signed by the Insured(s), the spouse of the Insured, and/or a person authorized by the Insured(s) to sign the Assignment on the Insured's behalf. *See Exhibit "A."*

19.     Insured/Assignor contracted with Plaintiff for Plaintiff to provide architectural services in relation to all damaged building elements, including but not limited to structural, electrical, mechanical and/or other damaged elements. *See copy of Contract Agreement for Architectural Services, attached hereto and incorporated herein as Exhibit "B."*

20.     Plaintiff's architectural services are required by the Florida Building Code.

21.     Plaintiff's architectural services are covered under the subject policy in relation to the Loss.

22.     Plaintiff prepared and submitted to Defendant reasonably priced bills for the architectural services provided and/or for additional services to be provided, which are required by the Florida Building Code and necessary to restore the property to its pre-loss condition. *See copy of the invoice attached hereto and incorporated herein as Exhibit "C."*

23.     Defendant was afforded the opportunity to fully inspect the Loss, investigate the cause of the Loss, quantify the amount of the Loss, and evaluate Plaintiff's Assignment of Benefits and Invoice.

24.     Defendant did inspect the Loss and Property during its investigation of the Insured's Loss and Plaintiff's Invoice.

25.     Defendant failed and/or refused to pay the full amount of Plaintiff's Invoice.

26.     Defendant breached the Policy by denying coverage for the Loss, and/or by failing and/or refusing to pay the full amount of Plaintiff's invoice.

27.     Plaintiff has been damaged as a result of the Defendant's failure to pay the full amount of Plaintiff's invoice and breach of the Policy.

28.     As a direct and proximate result of Defendant's conduct, Plaintiff has been obligated to retain the undersigned attorney to bring this action, and is entitled to a reasonable attorney's fee pursuant to Section 627.428, Florida Statutes.

29.     In the alternative, should this Court find the written assignment of benefits between Plaintiff, KDH Architecture Inc., and the named insured, 921 Evergreen Drive and 730 Whitemore, LLC, to be invalid or unenforceable for any reason, it will be necessary for the Court to effectuate the parties' (Plaintiff and named insured) plain intent and find that Plaintiff has standing by means of an equitable assignment to demand that Defendant pay for Plaintiff's services.

**WHEREFORE**, Plaintiff sues Defendant for damages, together with interest, costs and attorney's fees pursuant to Fla. Stat. Section 627.428, or in the alternative Fla. Stat. Section 626.9373, or any other applicable attorney's fees statute, and further demands trial by jury of all issues triable as of right.

## <u>CERTIFICATE</u>

THIS COMPLAINT IS DATED and Signed this 5th day of August, 2019 and was filed by:

INSURANCE LITIGATION GROUP, P.A.
<u>Attorney for Plaintiff</u>
1500 N.E 162nd Street
Miami, Florida 33162
Telephone:   (786) 529-0090
Facsimile:    (866) 239-9520
E-Mail: service@ILGPA.COM

By:     /s/ Kimesha S. Smith
KIMESHA S. SMITH, ESQ.
FL Bar No. 116466

# EXHIBIT "A"



**KDH Architecture, Inc.**
AA 26002538
**1440 Coral Ridge Drive**
**Coral Springs, FL 33071**
**Telephone-954-908-9100**

## ASSIGNMENT OF INSURANCE BENEFITS

Client/Insured _921 Evergreen Drive and 730 whitmore LLC_

Policy Number _NPP8357671_

Claim Number _137081_

Insurer _Western World Insurance Company_

Date of Loss _12-15-17_

### I.   ASSIGNMENT OF INSURANCE BENEFITS

I, hereby, assign all insurance rights, benefits, proceeds and any causes of action under *any* applicable insurance policies to **KDH ARCHITECTURE, INC.** (hereinafter referred to as "Company"), for **Architect Services (only)** rendered or to be rendered by Company. In this regard, I waive my privacy rights. I make this assignment in consideration of Company's agreement to perform services and supply materials and otherwise perform its obligations under this contract. I also hereby direct my insurance carrier(s) to release all information requested by Company, its representative, and/or its Attorney for the direct purpose of obtaining actual benefits to be paid by my insurance carrier(s) for services rendered or to be rendered. I believe the appropriate insurance carrier to be

_Western World Insurance Company_

### II.   DIRECT PAYMENT AUTHORIZATION

I hereby authorize and unequivocally instruct direct payment of any benefits or proceeds to Company. The payment of any benefits or proceeds to Company must be sent directly to Company and payment made solely to Company.

Client/Insured(s):

Print: _Larry Brede_          Date _8/2/18_   Phone _954_

Signature: _____

Print: _____   Date _____   Phone_____

Signature: _____

# EXHIBIT "B"



**KDH Architecture, Inc.**
AA 26002538
**1440 Coral Ridge Drive**
**Coral Springs, FL 33071**
**Telephone-954-908-9100**

## CONTRACT AGREEMENT FOR ARCHITECTURAL SERVICES

Date: *1-2-2018*

**PROJECT DESCRIPTION:**
Building design and consulting for *REPAIR OF BUILDING DAMAGE FROM BROKEN PIPE - 12-15-2017*

**CLIENT:**

Name of Client(s): *921 EVERGREEN DRIVE AND 730 WHITMORE LLC*

Address of Project: *921 EVERGREEN DRIVE*

City, State and Zip Code: *LAKE PARK, FL 33403*

Mailing Address: *525 10th St. #503*

City, State and Zip Code: *Lake Park, FL. 33403*

Telephone Numbers: *954-*

E-mail Address(es): _____ *@gmail.com*

**AGREEMENT**
This agreement is made by and between KDH Architecture, Inc., (hereinafter referred to as "Architect"), and the Client(s) whose names(s) appears above, referred to in this agreement as "Client", herewith agree to have Architectural Services performed in accordance with the following SCOPE OF SERVICES and STANDARD TERMS AND CONDITIONS FOR ARCHITECTURAL SERVICES.

### SCOPE OF SERVICES

The Architect shall provide Architectural services as follows:

**PHASE 1**
Site visit evaluation and preliminary documentation of damage and affected areas.

**PHASE 2**
Preliminary design drawings and specifications. This phase also includes but is not limited to: preliminary estimates for the cost of the work, code upgrade analysis, preparation of as-builts, etc.

**PHASE 3**
Based on the Project requirements, the Architect shall prepare **Complete Design Documents** for the Owner's approval consisting of drawings and other documents appropriate for the Project and suitable for filing with the Building Department, and for construction by a qualified General Contractor. This phase also includes but is not limited to: Construction administration and/or supervision of the work.

INITIALS _____ ✓

Page 1 of 4

## STANDARD TERMS AND CONDITIONS FOR ARCHITECTURAL SERVICES

**1. ENTIRE AGREEMENT**
This Agreement supersedes all prior written proposals and/or negotiations. This Agreement may only be modified in writing executed by both parties.

**2. SERVICES TO BE PERFORMED**
The services to be performed are described above in the Scope of Services. The Architect shall provide such including labor, materials, supplies, equipment, transportation and supervision. *Construction administration and/or supervision, building department searches (existing records), building department violations, building department correction of submissions, meetings with insurance company representatives and/or their consultants, and other work not enumerated in the Scope of Services is not included in the 10% compensation portion of this agreement, but, if provided will be billed at the hourly rates below.*

**3. COMPENSATION** Will be paid based on the greater of A (percentage plus hourly) or B (hourly) below.

A

Will be based on ten percent (10%) of the Construction Cost plus the hourly rate for the (italicized) work described in section 2 above. Construction Cost is defined as: the total cost or, to the extent the Project is not completed, the estimated cost of all elements of the Project designed, selected, specified and/or evaluated by the Architect and his consultants. Construction Cost shall include the cost at current market rates of all labor and materials, equipment, etc. incorporated into the Construction project including the Contractor(s) costs of management and supervision of the construction plus contractors and subcontractors overhead and profit. Construction Cost does not include the compensation of the Architect and the Architect's consultants. Architect will make final determination of Construction Cost.

B
Will be based on the following:

| Description | Remuneration |
|---|---|
| Architect | $325 per hour |
| Clerical | $85 per hour |
| Consultants (Engineers, Drafting, etc. ) | Cost plus 25% for overhead and profit |
| Reimbursable expenses as defined below | Cost plus 25% for overhead and profit |

**Reimbursable Expenses.** Reimbursable expenses shall include, but not be limited to, Building departments fees and costs, expeditor fee's, consultants' fees, printing, reproductions, bulk copying, photographic services, long distance telephone calls, postage, shipping, delivery, travel expenses (mileage, tolls, etc.), travel time (all time is measured portal to portal) lodging, meals and/or other project related out-of-pocket expenses. Items shall be reimbursed to the Architect at cost plus twenty percent (25%)For overhead and profit.
**Terms of Payment.** Invoices shall be submitted. Payments are due upon the Client's receipt of invoice. Amounts that are unpaid thirty (30) days after the invoice date shall bear interest at the rate of one and one-half percent (1-1/2%) per month.
**Payments Withheld.** No deductions shall be made from the Architect's compensation.
**Suspension.** If any payment is more than ten (10) days past due, or the payee responsible under the Assignment of Benefits delays or refuses payment, the Architect may at Architects discretion, suspend services under this Agreement until the Architect is paid in full all amounts due for services, expenses, and other charges. Additionally, in the event of suspension, the Client shall waive all rights, claims, etc. which were caused by the suspension whether they were a direct or indirect result of such suspension.
**Expert Witness.** Expert witness consulting by the Architect is included in this contract if needed. Hourly rates and other remuneration ( as show above) will apply for all work except for Depositions and Testimony. Depositions and Testimony will be billed as either $1,500 for a 1/2 day or $3,000 for a full day plus expenses.
**Rates.** Hourly rates specified above are valid for one (1) year from the date listed on the Scope of Services and shall be increased five percent (5%) on the first day of the subsequent year to reflect market conditions.
**4. CLIENT'S RESPONSIBILITIES**
The client shall provide requested information and make timely decisions in order to facilitate a reasonable and standard progression of the Architects work. The Architect shall not have control or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Contractor, Construction Manager, or Subcontractors. The Architect shall at all times have access to the project during design and construction periods.
The Client will cooperate, and comply with their insurance company's terms and conditions as it relates to the Architects work performed. Including but not limited to Sworn Statements in Proof of Loss, and Examination Under Oath, depositions, and testimony. The Architect shall assume that the existing Building Drawings and Surveys, if required, shall be readily available and/or be provided or paid for by the Client. The Architect assumes all information on these documents is accurate and is not responsible for any information completed by others.

INITIALS _____

Page 2 of 4

**5. OWNERSHIP OF DOCUMENTS**

All documents prepared or furnished by the Architect pursuant to this Agreement are instruments of the Architect's professional service, and the Architect shall retain an ownership and property interest therein. The Architect grants the Client a license to use instruments of the Architect's professional service for the purpose of constructing, occupying and maintaining this specific Project. Reuse and/or modification of any such documents, without the Architect's written permission, shall be at the Client's sole risk, and the Client agrees to indemnify and hold the Architect harmless from all claims, damages and expenses, including attorney's fees, arising out of such reuse and/or modification by the Client or by others acting through the Client.

**Notice of Copyright.** All ideas, designs, arrangements and/or plans indicated or represented by the Architect's drawings will be created, evolved and developed for use on this specific Project. No such ideas, designs, arrangements and/or plans shall be used by or disclosed to any purpose whatsoever without the written permission of the Architect.

**6.. PUBLICITY**

The Architect and its consultants shall have the right to photograph the Project and to use the photographs in the promotion of its professional service through publication, advertising, public relations, brochures, websites, or other marketing media.

**7. INSURANCE, IMDEMNITY AND LIMITATIONS**

**Insurance.** The Architect shall maintain Professional Liability Insurance throughout the period of this Agreement. Certificates of insurance are available on request. The expense of any additional insurance coverage or increased policy limits of liability beyond, including professional liability insurance, requested by the Client in excess of the standard coverage of the Architect and its consultants shall be borne by the Client.

The Client shall require the contractor to name the Architect as an Additional Insured on the contractor's insurance policy.

**Limitations:** To the fullest extent permitted by law, the total liability, in the aggregate, of Architect to Client and/or anyone claiming by, through or under Client, for any and all injuries, claims, losses, expenses, or damages whatsoever arising out of or in any way related to this contracts services, the Project or this Agreement, from any cause or causes whatsoever, including but not limited to, negligence, strict liability, breach of contract or breach of warranty shall not exceed the total compensation received by Architect under this agreement.

**Waiver of Consequential Damage.** The Architect and the Client waive consequential damage for claims, disputes and other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with the provisions defining termination.

**Hazardous Substances.** The Architect shall not be responsible for the identification, removal, testing and/or certification of removal relative to any hazardous substance including, but not be limited to, PCB, petroleum, mold infestation, hazardous waste, asbestos, lead, and any other similar substances.

**Unforeseen, Latent or Hidden Conditions.** Unforeseen, latent or hidden conditions may not be readily ascertainable regardless of the extent of the investigation. Such conditions may impact the design and necessitate extensive revisions to the design. The Architect shall survey the existing conditions, but is not responsible for concealed or unknown items that cannot be reasonably determined.

**Indemnity** Client herewith indemnifies and holds Architect harmless for any claims, demands, lawsuits, damages, or any other damages sustained by Architect arising out of the Clients work. This indemnity shall specifically include any and all attorney fees (with or without a cause of action filed in court and specifically including the appellate level) sustained or billed to Architect.

**8. STANDARD OF PRACTICE**

Services performed by the Architect under this Agreement shall be conducted in a manner consistent with the level of care and skill ordinarily exercised by members of their respective professions practicing in the same locality under similar conditions.

No other representation, expressed or implied, and no warranty or guarantee is included or intended in this Agreement, or any report, opinion, document, or otherwise.

**9. DISPUTES**

The venue for all claims or disputes arising out of, or relating to this agreement, or the breach thereof shall be in Broward County, Florida. This agreement shall be interpreted under Florida law. If Architect is forced to bring any legal action in order to collect fees and/or costs from Client, Client agrees to pay all costs and reasonable attorney's fees to Architect associated with the legal action henceforth. It is mutually agreed that the terms of this Agreement shall be binding upon both parties and their successors, executors, administrators and assigns.

**10. MISCELLANEOUS PROVISIONS**

If any provision of this Agreement should, for any reason be held in violation of any applicable law, and so much of this Agreement be held unenforceable, then the invalidity of such a specific provision in this Agreement shall not be held to invalidate any other provisions in this Agreement, which other provisions shall remain in full force.

**Certification of the Construction Documents.** The final Construction Documents shall be reviewed and certified by the Client and Architect prior to contractor bidding and/or municipal review. Certification by the Client and Architect shall indicate that the Construction Documents meet with all party's full approval.

INITIALS _____

**11. TERMINATION**

Either party may elect to terminate this Agreement with not less than (2) days' notice for any reason. The Client shall hold the Architect harmless for delays, clarifications, or nonconformance with the Contract Documents if the Architect has been terminated or terminates the agreement. Additionally, the Agreement shall terminate if, there is an execution of a replacement formal professional services contract between the Client and the Architect. Upon termination by any of the above, the Architect shall be entitled to compensation, as set forth in paragraph 3, for those services rendered upon to the effective date of termination.

**12. BILLING**

For billing purposes, the ten percent (10%) compensation shall be divided by phase as described below:
Phase 1:  50% (fifty percent); Phase 2: 40% (forty percent); Phase 3:  10% (ten percent)

## PURSUANT TO FLORIDA STATUTE § 558.035, AN INDIVIDUAL EMPLOYEE OR AGENT OF KDH ARCHITECTURE, INC. MAY NOT BE HELD INDIVIDUALLY LIABLE FOR DAMAGES RESULTING FROM NEGLIGENCE OCCURRING WITHIN THE COURSE AND SCOPE OF PROFESSIONAL SERVICES RENDERED UNDER THIS PROFESSIONAL SERVICES CONTRACT.

**Agreed by:**

**CLIENT:**

Print: _Larry Biede_ Date _1/2/18_

Signature: _[signature]_

Print: _____ Date _____

Signature: _____

**Accepted by and authorized for KDH Architecture, Inc. by:**

Print: _Kenneth Hecht_ Date _1-2-18_

Signature: _[signature]_

Page 4 of 4

# EXHIBIT "C"

### KDH Architecture, Inc.

AA 26002538
**1440 Coral Ridge Drive**
**Coral Springs, Florida  33071**
**Phone:(954) 908-9100**
Email: KDH@KDH--Architect.com

| | |
|---|---|
| 11/12/2018 | INVOICE # 1 |

730 Whitmore, LLC dba 921 Evergreen .LLC
921 Evergreen Drive
Lake Park, FL  33403

Assignment of Benefits - Architecture
Western World Insurance Co.
Claim # 137081 - Date of Loss - 12/15/2017

**PROFESSIONAL SERVICES FROM:   1/07/2018 to 11/2/2018**

| CATEGORY | DESCRIPTON | % PHASE COMPLETED | WORK TO STILL BE PERFORMED |
|---|---|---|---|
| File Review | Review of Existing plans, Documents, etc. | 100% | |
| Client Consulation | Established project requirements w rep | 100% | |
| Site Inspections | Photographs | 100% | |
| | Damage Assessment - Portal to Portal | 100% | |
| Start Design | Existing Condition(s) Determination | 100% | |
| | Floor Plan Creation | 100% | |
| Building Code Review | County | 100% | |
| | State | 90% | |
| Consultations & Meetings | Adjusters | TBD | FWMR |
| | Client rep | TBD | FWMR |
| | Engineer(s) | TBD | FWMR |
| | Insurance Company Representatives | TBD | FWMR |
| | General Contractor &/or Suppliers | TBD | FWMR |
| | Building Department | TBD | FWMR |
| Preliminary Design | Title Sheet Plan | 100% | |
| | Construction Safety, Phasing, Etc. | 100% | |
| | Demolition Plan | 100% | |
| | Architectural Plans 1-8 | 100% | |
| | M+E+P Plans | 100% | |
| Construction Cost & Scope Analysis & Consultations | Consult & Advise on cost & scope | TBD | FWMR |
| | Review Estimate(s) | TBD | FWMR |
| | Scope with Contractors | TBD | FWMR |
| Construction Documents (Sealed Drawings) | Title Sheet Plan | 0% | Open |
| | Construction Safety, Phasing, Etc. | 0% | Open |
| | Demolition Plan | 0% | Open |
| | Architectural Plans 1-6 | 0% | Open |
| | Plumbing Plan | 0% | Open |
| | Mechanical Plan | 0% | Open |
| | Electricial Plan | 0% | Open |
| Local Building Dept Requirments | Permit Narrative Responses | 0% | Open |
| | Structural Certifications | 0% | Open |
| | Submittal Requirements | 0% | Open |
| | Other Requeetsed Submissions | 0% | Open |
| Bidding & Selection of Contractors | Distribution of Construction Documents to Bidders | 0% | Open |
| Construction Administration | Pre-bid meeting | 0% | Open |
| | Addressing bidders concerns | 0% | Open |
| | Bid evaluation | 0% | Open |
| | Contract Award | 0% | Open |
| | Project coordination meeting | 0% | Open |
| | Construction evaluation | 0% | Open |
| | Request for payment evaluation | 0% | Open |
| | Subcontractors submittals evaluation | 0% | Open |
| | Supplemental & clarification drawings | 0% | Open |
| | Corrective work list | 0% | Open |
| | Construction evaluation (corrective work) | 0% | Open |
| | Construction evaluation (final) | 0% | Open |

**SUBTOTAL  -  FOR WORK PERFORMED TO DATE. FURTHER ARCHITECT WORK  IS REQUIRED**     $     68,545.00

## REIMBURSABLE EXPENSES:

| DESCRIPTION | CHARGE | LINE TOTAL |
|---|---|---|
| Drawings, Blueprinting, Travel, etc. | | 1,369.79 |
| | | |
| | SUBTOTAL  $ | 1,807.34 |

## GRAND TOTAL THIS INVOICE                                    $   70,352.34

Please make checks payable to:  **KDH Architecture, Inc.** and mail to:

1440 Coral Ridge Drive
Coral Springs, FL  33071

*This invoice is for the work shown, and may be modified in future invoices in accordance with the contract which states:*

**COMPENSATION    Will be based on the greater of ...percentage plus hourly ... or hourly**

TBD - To Be Determined          FWMR - Furhur Work Maybe Required

*19-000210396*

CHIEF FINANCIAL OFFICER
**JIMMY PATRONIS**
STATE OF FLORIDA

KDH ARCHITECTURE INC., A/A/O 921
EVERGREEN DRIVE AND 730 WHITEMORE, LLC

PLAINTIFF(S)

VS.

WESTERN WORLD INSURANCE COMPANY

DEFENDANT(S)
_____/

| | |
|---|---|
| **CASE #:** | **50-2019-CA-010125-XXXX-MB** |
| **COURT:** | **CIRCUIT COURT** |
| **COUNTY:** | **PALM BEACH** |
| **DFS-SOP #:** | **19-000210396** |

SUMMONS, COMPLAINT, DISCOVERY, X1-CIVIL COVER SHEET FORM 1.PDF.PDF, X3-KDH REQUESTS FOR
ADMISSION-DENIAL 1.PDF.PDF, X4-DESIGNATION OF EMAIL ADDRESS 1.PDF.PDF

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Thursday,
August 8, 2019 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, August 9, 2019 to
the designated agent for the named entity as shown below.

WESTERN WORLD INSURANCE COMPANY
ANTHONY LEONE
300 KIMBALL DRIVE SUITE 500
PARSIPPANY, NJ 07054

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

FAITH EVERETT
INSURANCE LITIGATION GROUP
17021 NE 6TH AVE L-R
NORTH MIAMI BEACH, FL 33162

JJ1

Filing # 93672072 E-Filed 08/05/2019 03:19:46 PM

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.:

KDH ARCHITECTURE INC.,
A/A/O 921 EVERGREEN DRIVE
AND 730 WHITEMORE, LLC,

      Plaintiff,

v.

WESTERN WORLD INSURANCE COMPANY,

      Defendant.

_____/

## S U M M O N S

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this summons and a copy of the Complaint filed in this action on Defendant,

WESTERN WORLD INSURANCE COMPANY
C/O FLORIDA CHIEF FINANCIAL OFFICER, AS REGISTERED AGENT
200 EAST GAINES STREET, TALLAHASSEE, FL 32399

      Each Defendant is required to serve written defenses to the complaint or petition on KIMESHA S. SMITH, Esq. **of Insurance Litigation Group, P.A.,** Plaintiff's attorney, whose address is **1500 NE 162nd St, North Miami Beach, Florida 33162,** within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the **Clerk of this Court,** either before service on Plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against the defendant for the relief demanded in the complaint or petition.

DATED:    Aug 06 2019
     _____.

      WITNESS my hand and the Seal of said Court



          SHARON R. BOCK
          As Clerk of the Court

By_____
      As Deputy Clerk
      GINA BRIMMER D.C.

                       ILG File #: 11984
                       Claim #: 137081
             Case #: **_____**

RECEIVED AS STATUTORY REGISTERED AGENT on 08 August, 2019 and served on defendant or named party on 09 August, 2019 by the Florida Department of Financial Services

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075. (See instructions for completion.)

---

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

KDH ARCHITECTURE                                          Case #:   _____
INC. a/a/o 921
EVERGREEN DRIVE
AND 730 WHITEMORE,
LLC,,

  Plaintiff

                                                          Judge:   _____

vs.

WESTERN WORLD INSURANCE COMPANY

Defendant

**II.    TYPE OF CASE**          (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ Condominium
**X** Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
   ☐ Business governance
   ☐ Business torts
   ☐ Environmental/Toxic tort
   ☐ Third party indemnification
   ☐ Construction defect
   ☐ Mass tort
   ☐ Negligent security
   ☐ Nursing home negligence
   ☐ Premises liability—commercial
   ☐ Premises liability—residential
☐ Products liability
☐ Real property/Mortgage foreclosure
   ☐ Commercial foreclosure $0 - $50,000
   ☐ Commercial foreclosure $50,001 - $249,999
   ☐ Commercial foreclosure $250,000 or more

☐ Homestead residential foreclosure $0 - $50,000
☐ Homestead residential foreclosure $50,001 - $249,999
☐ Homestead residential foreclosure $250,000 or more
☐ Nonhomestead residential foreclosure
   $0 - $50,000
☐ Nonhomestead residential foreclosure
   $50,001 - $249,999
☐ Nonhomestead residential foreclosure
   $250,000 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more
☐ Professional malpractice
   ☐ Malpractice—business
   ☐ Malpractice—medical
   ☐ Malpractice—other professional
☐ Other
   ☐ Antitrust/Trade regulation
   ☐ Business transactions
   ☐ Constitutional challenge—statute or ordinance

□ Constitutional challenge—proposed amendment
□ Corporate trusts
□ Discrimination—employment or other
□ Insurance claims
□ Intellectual property

□ Libel/Slander
□ Shareholder derivative action
□ Securities litigation
□ Trade secrets
□ Trust litigation

**III.** **REMEDIES SOUGHT** (check all that apply):
**X** monetary;
□ nonmonetary declaratory or injunctive relief;
□ punitive

**IV.** **NUMBER OF CAUSES OF ACTION:** [1]
(specify)_____
_____

**V.** **IS THIS CASE A CLASS ACTION LAWSUIT?**
□ yes
**X** no

**VI.** **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
**X** no
□ yes If "yes," list all related cases by name, case number, and court.
_____
_____
_____

**VII.** **IS JURY TRIAL DEMANDED IN COMPLAINT?**
**X** yes
□ no

_____

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature /s/ Kimesha S. Smith            Fla. Bar #   116466
_____            _____
Attorney or party                          (Bar # if attorney)

KIMESHA S. SMITH, Esq.                     August 05, 2019
_____            _____
(type or print name)                        Date

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.:

KDH ARCHITECTURE INC.,
A/A/O 921 EVERGREEN DRIVE AND 730 WHITEMORE, LLC,

     Plaintiff,

v.

WESTERN WORLD INSURANCE COMPANY,

     Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

Plaintiff, KDH Architecture Inc., a/a/o 921 Evergreen Drive and 730 Whitemore, LLC

("Plaintiff"), pursuant to Rule 1.350, Fla. R. Civ. P. requests Defendant, Western World Insurance

Company ("Defendant"), furnish copies of the following documents to the offices of the

undersigned attorney within forty-five (45) days from the date of service of this request.

## DEFINITIONS AND INSTRUCTIONS

1.     The term "Plaintiff" means KDH Architecture Inc., Inc., and its agents, employees,
independent contractors, attorneys, and all other persons acting or purporting to act on its behalf.

2.     The term "Insured" means named insured, 921 Evergreen Drive and 730
Whitemore, LLC, and his\her agents, employees, independent contractors, attorneys, and all other
persons acting or purporting to act on his\her behalf.

3.     The term "you" or "Defendant" means Western World Insurance Company, and its
agents, employees, independent contractors, subsidiaries, divisions, parent company, holding
company, directors, officers, attorneys, and all other persons acting or purporting to act on its
behalf.

4.     The term "Policy" means the policy, number NPP8357671, which Defendant issued
to Insured for the property located at 921 Evergreen Drive, Lake Park , Florida 33403, that was in
effect on the date of loss alleged in Plaintiff's Complaint filed in this action.

5.      The term "Insured Building" or "Insured Property" means the insured structure and/or its contents located at the address described in Plaintiff's Complaint filed in this action.

6.      The term "Plaintiff's Invoice" or "Invoice" means the invoice, which is attached to Plaintiff's Complaint as Exhibit A, which Plaintiff issued after performing services to the Insured Property, after the Insured Property suffered damage caused by a water event on or about the date of loss alleged in the Complaint.

7.      The term "Plaintiff's Assignment of Benefits" means the assignment, which is attached to Plaintiff's Complaint as Exhibit B, which the Insured gave to Plaintiff in exchange for Plaintiff performing services to the Insured Property on or about the date of loss alleged in Plaintiff's Invoice.

8.      The term "Loss" means the event at issue in which the Insured suffered property damage, on the date of loss alleged in Plaintiff's Complaint.

9.      The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons or other entity.

10.     The term "document" or "documents" means any written, typed, or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, emails, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, claim diaries, electronic claim notes, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or natural records or representations of any kind (including without limitation photographs, photographic negative, microfiche, microfilm, videotape, recordings, motion pictures, phonograph recordings, transcripts or log of such recording, projection), electronic, computer, mechanical, or electric records or representations of any kind (including without limitation tapes, cassettes, discs and records), and binders, cover notes, certificates, analysis, study memoranda, note lists, diaries, logs, questionnaires, bills, purchase orders, shipping orders, memorandum of contract, agreements, licenses, permits, orders, financial data, acknowledgements, computer or data procession cards, computer or data processing discs, and all other data compilations from which information can be obtained or translated, reports and/or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, no matter how produced or maintained, in your actual or constructive possession, custody or control, whether prepared, published or released by you or by any other person.  If data is stored on computer or electronic media (inter-company email, for example), produce hard copies of each such document."  "Documents" includes all attachments and enclosures.

11.     The term "all documents" means every document or group of documents, as above defined, that are known to you or that can be located or discovered by reasonably diligent efforts.

12.     The term "coverage letter(s)" means the correspondence from You to the Insured throughout the claim at issue regarding Your position as to coverage for the Loss.

13.     As used herein, the singular shall include the plural, the plural shall include the singular, and masculine feminine and neuter shall include each of the other genders.

14.     The terms "relating to" or "in any way related to" means in whole or in part constituting, containing, concerning, discussing, commending upon, describing, analyzing, identifying, stating, pertaining to, referring to, or forming the basis of.

15.     The term "Prior Claim" means all claims submitted by or on behalf of an Insured for damage occurring prior to the date of loss alleged in Plaintiff's Complaint, regarding the Insured Building or Insured Property.

16.     The term "Subsequent Claim" means all claims submitted by or on behalf of an Insured for damage occurring after the date of loss alleged in Plaintiff's Complaint, regarding the Insured Building or Insured Property.

17.     The term "Plaintiff's Complaint means the complaint filed by Plaintiff in this action.

18.     This request shall be continuing in nature so as to require the filing of supplemental answers to the extent required under Florida law.

## **Requests**

1.     A certified and complete copy of the Policy that Defendant issued to the Insured that was in effect on or about December 15, 2017.

2.     All documents reflecting Defendant's inspection(s) of the Insured Property after December 15, 2017.

3.     All documents reflecting Defendant's inspection(s) of the Insured Property before December 15, 2017, covering the preceding five (5) years.

4.     All documents reflecting Defendant's inspection(s) of the Insured Property during the Defendant's underwriting of the Insured's Policy.

5.      All documents reflecting Defendant's inspection(s) of the Insured Property during Defendant's underwriting of all insurance policies Defendant issued to the Insured for the Insured Property prior to December 15, 2017.

6.      All photographs and/or videos submitted by Plaintiff to Defendant in any way related to the Loss or Invoice.

7.      All photographs and/or videos submitted by Defendant to Plaintiff in any way related to the Loss or Invoice.

8.      All photographs and/or videos taken by Defendant in any way related to the Loss or Invoice.

9.      All correspondence, emails and all other documents provided by Plaintiff and/or the Insured, to Defendant in any way related to the Loss or Invoice.

10.     All correspondence, emails and all other documents provided by Defendant, to Plaintiff and/or the Insured in any way related to the Loss or Invoice.

11.     All documents reflecting Defendant's efforts to investigate the Loss or Invoice.

12.     All documents documenting or supporting Defendant's affirmative defenses, or that Defendant anticipates will support Defendant's reasons for denying or failing to pay the full amount of Plaintiff's Invoice.

13.     All documents, including but not limited to estimates, reports, testing, photographs and/or videos created by Defendant, Defendant's adjusters, Defendant's loss consultants, or by any expert retained by Defendant, including but not limited to plumbers and engineers, in any way related to the Loss and/or Plaintiff's Invoice.

14.     All documents identified in Defendant's Answers to Plaintiff's First Set of Interrogatories.

15.     A current curriculum vitae and all biographical information for all person(s) who inspected the Insured Property for or on behalf of Defendant following the Loss.

16.     All documents in any way related to the damage caused to the Insured Property from the alleged Loss.

17.     All documents documenting or supporting Plaintiff's claim for collection of its Invoice from Defendant in this lawsuit.

18.     All documents related to Plaintiff's Invoice or the Insured Property that support how Defendant determined whether to pay Plaintiff's Invoice, and/or how much of Plaintiff's invoice to pay.

19.     All documents reflecting the relationship between Defendant and the adjuster that assisted Defendant in investigating, adjusting, and/or evaluating Plaintiff's Invoice.

20.     All documents that support any denials by Defendant of Plaintiff's First Request for Admissions.

21.     All reports relating to the damage the Insured Property sustained during or as a result of the Loss.

22.     All reports relating to the condition of the Insured Property before the Loss.

23.     All reports relating to the condition of the Insured Property after the Loss.

24.     All documents showing when the Insured notified Defendant of the Loss.

25.     All documents showing when Plaintiff notified Defendant of the Loss.

26.     All electronic claim notes made by or on behalf of Defendant in any way relating to Plaintiff's Invoice, the Loss, or the condition of Insured Property at the time of Loss.

27.     The part of Defendant's claim file that Defendant reasonably expects to rely upon at trial in this action.

28.     The part of Defendant's claim file that Defendant reasonably expects to use at trial in support of its affirmative defenses.

29.     All documents that Defendant reasonably expects to rely upon at trial in this action.

30.     All documents that Defendant reasonably expects to use at trial in support of its affirmative defenses.

31.     The part of Defendant's claim file that supports the action taken by Defendant in paying or refusing to pay Plaintiff's Invoice.

32.     All documents that support the action taken by Defendant in paying or refusing to pay Plaintiff's Invoice.

33.     All estimates prepared by Defendant in any way related to the amount claimed by Plaintiff in this action and/or to Plaintiff's Invoice.

34.     All estimates prepared by architecture companies that Defendant may use to support its reason for non-payment or partial payment of Plaintiff's Invoice.

35.     All estimates prepared by adjusters, contractors, loss consultants, or any other person or entity for Defendant, that are in any way related to the amount claimed by Plaintiff in this action and/or to Plaintiff's invoice.

36.     All estimates prepared by adjusters, contractors, loss consultants, or any other person or entity for Defendant, that Defendant may use to support its reason for non-payment or partial payment of Plaintiff's invoice.

37.     All documents Defendant provided to the person(s) who investigated, adjusted or otherwise evaluated Plaintiff's Invoice or the Loss.

38.      All documents reflecting any communication between Defendant, and any of Defendant's agents, independent adjusters, plumbers, engineers or other representatives, in any way related to Plaintiff's Invoice or the Loss.

39.      All underwriting documents in any way relating to the condition of the Insured Property before the Loss.

40.      The underwriting file kept by Defendant regarding the Insured Property dating from the inception of Defendant's Policy on the Insured Premises through the present time.

41.      All insurance applications the Insured submitted to Defendant regarding the Insured Property.

42.      All documents containing any facts supporting any of Defendant's affirmative defenses.

43.      All documents containing any facts supporting any of Defendant's reasons for failing to pay and/or reducing the amount paid to Plaintiff for Plaintiff's Invoice.

44.      All documents supporting any allegation or contention by Defendant that Plaintiff's Invoice is related to damages involving a prior claim made by Insured or prior damage sustained by an Insured.

45.      All documents supporting any allegation or contention by Defendant that Plaintiff's Invoice is related to damages involving a subsequent claim made by Insured or subsequent damage sustained by an Insured.

46.      All documents supporting any allegation or contention by Defendant that the Insured's damages from the Loss are related to damages involving a prior claim made by Insured or prior damage sustained by an Insured.

47.     All documents supporting any allegation or contention by Defendant that related to damages involving a subsequent claim made by Insured or subsequent damage sustained by an Insured.

48.     All signed sworn proofs of loss submitted by the Insured to Defendant regarding the Loss.

49.     Complete and legible copies of all building permits and all other records obtained from the county or other municipality, applicable to the Insured Property covering a five year span prior to the Loss.

50.     All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving a Prior Claim made by Insured or prior damage sustained  by an Insured.

51.     All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving a Subsequent Claim made by Insured or subsequent damage sustained by an Insured.

52.     All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving the claim for the same date of Loss alleged in the Complaint filed in this action.

53.     All correspondence and documents between Defendant and any third parties, excluding Defendant's attorney, in any way related to (1) the condition of the Insured Property before the Loss; or (2) the damage to the Insured Property sustained during the Loss.

54.     All reports relating to Plaintiff's Invoice or to the damages sustained to Insured Property during or as a result of the Loss.

55.     All documents showing or pertaining to any repairs made to the Insured Property by or on behalf of the Insured prior to the Loss, including but not limited to repair invoices, estimates, canceled checks, credit card receipts, contracts for repair, receipts, certificates of completion, notices of commencement, special assessment notices, payment logs, building permits and building permit applications.

56.     All documents showing or pertaining to any repairs made to the Insured Property by or on behalf of the Insured after the Loss, including but not limited to repair invoices, estimates, canceled checks, credit card receipts, contracts for repair, receipts, certificates of completion, notices of commencement, special assessment notices, payment logs, building permits and building permit applications.

57.     All transcripts of any Examinations Under Oath given or provided by the Insured regarding the Loss.

58.     All transcripts of any Examinations Under Oath given or provided by anyone besides the Insured regarding the Loss.

59.     All recorded statements given or provided by the Insured regarding the Loss.  This request seeks a copy of the recording itself, not Defendant's transcript of the recorded statement.

60.     All recorded statements given or provided by anyone besides the Insured regarding the Loss.  This request seeks a copy of the recording itself, not Defendant's transcript of the recorded statement.

61.    All Coverage Letters sent by Defendant to the Insured in any way related to the

Loss.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served on Defendant with the Complaint.

INSURANCE LITIGATION GROUP, P.A.
Attorney for Plaintiff
1500 NE 162nd Street
Miami, Florida 33162
Telephone:    (786) 529-0090
Facsimile:    (866) 239-9520
E-Mail: service@ILGPA.COM

By:    /s/ Kimesha S. Smith
        KIMESHA S. SMITH, ESQ.
        FL Bar No. 116466

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.:

KDH ARCHITECTURE INC.,
A/A/O 921 EVERGREEN DRIVE AND 730 WHITEMORE, LLC,

     Plaintiff,

v.

WESTERN WORLD INSURANCE COMPANY,

     Defendant.

_____/

### PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT

Plaintiff, KDH Architecture Inc., a/a/o 921 Evergreen Drive and 730 Whitemore, LLC, ("WR"), pursuant to Rule 1.370, Fla. R. Civ. P., serves this First Request for Admissions, and requests that the Defendant within forty-five (45) days from service of this request, comply with the following definitions and instructions, and admit the requests that follow them.

### DEFINITION AND INSTRUCTIONS

1.    The term "Plaintiff" means KDH Architecture Inc., Inc., and its agents, employees, independent contractors, attorneys, and all other persons acting or purporting to act on its behalf.

2.    The term "Insured" means named insured, 921 Evergreen Drive and 730 Whitemore, LLC, and his\her agents, employees, independent contractors, attorneys, and all other persons acting or purporting to act on his\her behalf.

3.    The term "you" or "Defendant" means Western World Insurance Company, and its agents, employees, independent contractors, subsidiaries, divisions, parent company, holding company, directors, officers, attorneys, and all other persons acting or purporting to act on its behalf.

4.      The term "Policy" means the policy, number NPP8357671, which Defendant issued to Insured for the property located at 921 Evergreen Drive, Lake Park , Florida 33403, that was in effect on the date of loss alleged in Plaintiff's Complaint filed in this action.

5.      The term "Insured Building" or "Insured Property" means the insured structure and/or its contents located at the address described in Plaintiff's Complaint filed in this action.

6.      The term "Plaintiff's Invoice" means the invoice, which is attached to Plaintiff's Complaint as Exhibit A, which Plaintiff issued after performing services to the Insured Property, after the Insured Property suffered damage caused by a water event on or about the date of loss alleged in the Complaint.

7.      The term "Plaintiff's Assignment of Benefits" or "Assignment of Benefits" means the assignment, which is attached to Plaintiff's Complaint as Exhibit B, which the Insured gave to Plaintiff in exchange for Plaintiff performing services to the Insured Property on or about the date described in Plaintiff's Invoice.

8.      The term "Loss" means the event at issue in which the Insured suffered property damage, on the date of loss alleged in Plaintiff's Complaint.

9.      The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons or other entity.

10.      The term "document" or "documents" means any written, typed, or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, emails, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, claim diaries, electronic claim notes, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or natural records or representations of any kind (including without limitation photographs, photographic negative, microfiche, microfilm, videotape, recordings, motion pictures, phonograph recordings, transcripts or log of such recording, projection), electronic, computer, mechanical, or electric records or representations of any kind (including without limitation tapes, cassettes, discs and records), and binders, cover notes, certificates, analysis, study memoranda, note lists, diaries, logs, questionnaires, bills, purchase orders, shipping orders, memorandum of contract, agreements, licenses, permits, orders, financial data, acknowledgements, computer or data procession cards, computer or data processing discs, and all other data compilations from which information can be obtained or translated, reports and/or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, no matter how produced or maintained, in your actual or

constructive possession, custody or control, whether prepared, published or released by you or by any other person.  If data is stored on computer or electronic media (inter-company email, for example), produce hard copies of each such document."  "Documents" includes all attachments and enclosures.

11.     The term "all documents" means every document or group of documents, as above defined, that are known to you or that can be located or discovered by reasonably diligent efforts.

12.     As used herein, the singular shall include the plural, the plural shall include the singular, and masculine feminine and neuter shall include each of the other genders.

13.     The connectives "and" and "or" shall be construed either disjunctive or conjunctively as necessary to bring within the scope of these requests all response that might otherwise be construed to be outside their scope.

14.     The terms "coverage letter(s)" means the correspondence from You to policyholder throughout the claim at issue regarding Your position as to coverage for the loss alleged in the Complaint filed in this action.

15.     The term "Loss" means the event at issue in which the policyholder suffered property damage.

16.     The terms "relating to" or "in any way related to" means in whole or in part constituting, containing, concerning, discussing, commending upon, describing, analyzing, identifying, stating, pertaining to, referring to, or forming the basis of.

17.     "Identify" and "identity" mean:

    a.   With respect to a natural person, to state the person's name, title at the time in question, employer and business address at the time in question and the current or last known employer, business address, and home address;

    b.   With respect to an organization or entity, to state the full legal name of the entity and full name by which the organization or entity is commonly known or does business;

    c.   With respect to a document, to state the name(s) and title(s) of the author(s) and/or signatory(ies), addressee(s), and recipient(s) of any copies; the subject matter or title; the date of the document; the division, department, or unit of your organization with which the author(s) and/or addressee(s) are or were affiliated; and its present location and custodian; and

    d.   With respect to an oral communication to state the names and titles of all persons involved in the communication, and the date and approximate time of the communication.

18.     This request shall be continuing in nature so as to require the filing of supplemental interrogatory answers to the extent required by Florida law.

## REQUESTS

Admit the truth of the following statements:

1.      On December 15, 2017, the Insured had an insurance Policy with Defendant that was in full force and effect for the Insured Property located at 921 Evergreen Drive, Lake Park , Florida 33403.

2.      Damage caused by a sudden and accidental water loss is covered under the Policy.

3.      Ensuing damage caused by water is covered under the Policy.

4.      Damage caused by water is not expressly excluded from coverage under the Policy.

5.      Ensuing damage caused by water is not expressly excluded from coverage under the Policy.

6.      Architecture services are covered under the Policy.

7.      Defendant was timely notified that the Loss occurred at the Insured Property.

8.      The Insured has complied with all prerequisites for receiving benefits under the Policy for the Loss.

9.      The above-named Defendant is properly named in this lawsuit.

10.      The Loss that occurred on December 15, 2017 at the Insured Property is a covered loss under the Policy.

11.      Before Plaintiff sued Defendant in this lawsuit, Defendant received Plaintiff's Assignment of Benefits and Plaintiff's Invoice.

12.      Pursuant to the Assignment of Benefits, the Insured assigned to Plaintiff the right to sue Defendant to collect from Defendant the amount of Plaintiff's Invoice.

13.      Pursuant to the Assignment of Benefits, the Insured assigned to Plaintiff the Insured's right to demand that Defendant pay Plaintiff's Invoice.

14.     Plaintiff is an after-loss assignee under the Policy for the services Plaintiff provided to the Insured Property.

15.     Through the Assignment of Benefits, the Insured assigned to Plaintiff insurance benefits limited to the services Plaintiff provided to the Insured Property.

16.     The signature on the Assignment of Benefits is that of the Insured and/or the Insured's representative.

17.     Defendant assigned claim number 137081 to the Loss.

18.     Defendant denied coverage for payment of Plaintiff's Invoice.

19.     Prior to Plaintiff suing Defendant in this lawsuit, Defendant had the opportunity to evaluate Plaintiff's Invoice.

20.     Defendant's claims file and electronic claim notes are kept in the ordinary course of business.

21.     Defendant had the opportunity to inspect the Insured Property prior to issuing the insurance Policy to the Insured.

22.     Defendant inspected the Insured Property prior to the Loss.

23.     Defendant authored and/or drafted the Policy, and has a true and correct copy of the Policy in its possession.

24.     Following a covered loss under the Policy, payment may be made to an architecture company without the consent of the Defendant.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served on Defendant with the Complaint.

INSURANCE LITIGATION GROUP, P.A.
<u>Attorney for Plaintiff</u>
1500 NE 162nd Street
Miami, Florida 33162
Telephone:   (786) 529-0090
Facsimile:    (866) 239-9520
E-Mail: service@ILGPA.COM

By:    /s/ Kimesha S. Smith
       KIMESHA S. SMITH, ESQ.
       FL Bar No. 116466

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.:

KDH ARCHITECTURE INC.,
A/A/O 921 EVERGREEN DRIVE
AND 730 WHITEMORE, LLC,

 Plaintiff,

v.

WESTERN WORLD INSURANCE COMPANY,

 Defendant.

_____/

## NOTICE OF DESIGNATION OF E-MAIL ADDRESSES

 The Insurance Litigation Group, P.A., counsel for the Plaintiff, KDH ARCHITECTURE

INC., pursuant to Florida Rules of Judicial Administration 2.516 (b)(1)(a), designates the

following primary and secondary e-mail addresses for e-mail service in the above-referenced

case:

   Primary:  service@ilgpa.com
   Secondary: faith@ilgpa.com

## CERTIFICATE OF SERVICE

 I CERTIFY that the forgoing document was served with the Complaint.

    INSURANCE LITIGATION GROUP, P.A.
    Attorney for Plaintiff
    1500 NE 162nd Street
    Miami, Florida 33162
    Telephone: (786) 529-0090
    Facsimile: (866) 239-9520
    E-Mail: service@ilgpa.com

    By: /s/ Kimesha S. Smith
     KIMESHA S. SMITH, ESQ.
     FL Bar No. 116466

ILG File #: 11984
Claim #: 137081
Case #: **_____**

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.:

KDH ARCHITECTURE INC.,
A/A/O 921 EVERGREEN DRIVE AND 730 WHITEMORE, LLC,

     Plaintiff,

v.

WESTERN WORLD INSURANCE COMPANY,

     Defendant.

_____/

**PLAINTIFF'S NOTICE OF SERVING**
**FIRST SET OF INTERROGATORIES TO DEFENDANT**

     Plaintiff, KDH Architecture Inc., a/a/o 921 Evergreen Drive and 730 Whitemore, LLC,

("WR"), pursuant to Rule 1.340, Fla. R. Civ. P., serves this First Set of Interrogatories to be

answered under oath and in writing, within forty-five (45) days from the date of service hereof.

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that the foregoing was served on Defendant with the Complaint.

               INSURANCE LITIGATION GROUP, P.A.
               Attorney for   Plaintiff
               1500 NE 162nd Street
               Miami, Florida 33162
               Telephone:     (786) 529-0090
               Facsimile:     (866) 239-9520
               E-Mail: service@ILGPA.COM

             By:     /s/ Kimesha S. Smith,
                    KIMESHA S. SMITH, ESQ.
                    FL Bar No. 116466

## INTERROGATORY DEFINITION AND INSTRUCTIONS

1.      The term "Plaintiff" means KDH Architecture Inc., and its agents, employees, independent contractors, attorneys, and all other persons acting or purporting to act on its behalf.

2.      The term "Insured" means named insured, 921 Evergreen Drive and 730 Whitemore, LLC, and his\her agents, employees, independent contractors, attorneys, and all other persons acting or purporting to act on his\her behalf.

3.      The term "You" or "Defendant" means Western World Insurance Company and its agents, employees, independent contractors, subsidiaries, divisions, parent company, holding company, directors, officers, attorneys, and all other persons acting or purporting to act on its behalf.

4.      The term "Policy" means the policy, number NPP8357671, which Defendant issued to Insured for the property located at 921 Evergreen Drive, Lake Park , Florida 33403 that was in effect on the date of loss alleged in Plaintiff's Complaint filed in this action.

5.      The term "Insured Building" or "Insured Property" means the insured structure and/or its contents located at the address alleged in Plaintiff's Complaint filed in this action.

6.      The term "Plaintiff's Invoice" means the invoice, which is attached to Plaintiff's Complaint as Exhibit A, which Plaintiff issued after performing services to the Insured Property, after the Insured property suffered damage caused by a water event on or about the date of loss alleged in the Complaint.

7.      The term "Plaintiff's Assignment of Benefits" means the assignment, which is attached to Plaintiff's Complaint as Exhibit B, which the Insured gave to Plaintiff in exchange for Plaintiff performing services to the Insured Property on or about the date described in Plaintiff's Invoice.

8.      The term "Loss" means the event at issue in which the Insured suffered property damage, on the date of loss alleged in Plaintiff's Complaint.

9.      The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons or other entity.

10.     The term "document" or "documents" means any written, typed, or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, emails, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, claim diaries, electronic claim notes, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts,

returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or natural records or representations of any kind (including without limitation photographs, photographic negative, microfiche, microfilm, videotape, recordings, motion pictures, phonograph recordings, transcripts or log of such recording, projection), electronic, computer, mechanical, or electric records or representations of any kind (including without limitation tapes, cassettes, discs and records), and binders, cover notes, certificates, analysis, study memoranda, note lists, diaries, logs, questionnaires, bills, purchase orders, shipping orders, memorandum of contract, agreements, licenses, permits, orders, financial data, acknowledgements, computer or data procession cards, computer or data processing discs, and all other data compilations from which information can be obtained or translated, reports and/or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, no matter how produced or maintained, in your actual or constructive possession, custody or control, whether prepared, published or released by you or by any other person.  If data is stored on computer or electronic media (inter-company email, for example), produce hard copies of each such document."  "Documents" includes all attachments and enclosures.

11.     The term "all documents" means every document or group of documents, as above defined, that are known to you or that can be located or discovered by reasonably diligent efforts.

12.     As used herein, the singular shall include the plural, the plural shall include the singular, and masculine feminine and neuter shall include each of the other genders.

13.     The connectives "and" and "or" shall be construed either disjunctive or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope.

14.     The terms "coverage letter(s)" means the correspondence from You to the Insured throughout the claim at issue regarding Your position as to coverage for the Loss.

15.     The terms "relating to" or "in any way related to" means in whole or in part constituting, containing, concerning, discussing, commending upon, describing, analyzing, identifying, stating, pertaining to, referring to, or forming the basis of.

16.     "Identify" and "identity" mean:

a.   With respect to a natural person, to state the person's name, title at the time in question, employer and business address at the time in question, and the current or last known employer, business address, and home address;
b.   With respect to an organization or entity, to state the full legal name of the entity and full name by which the organization or entity is commonly known or does business;
c.   With respect to a document, to state the name(s) and title(s) of the author(s) and/or signatory(ies), addressee(s), and recipient(s) of any copies; the subject

matter or title; the date of the document; the division, department, or unit of your organization with which the author(s) and/or addressee(s) are or were affiliated; and its present location and custodian; and

d.  With respect to an oral communication to state the names and titles of all persons involved in the communication, and the date and approximate time of the communication.

17.    This request shall be continuing in nature so as to require the filing of supplemental interrogatory answers to the extent required by Florida law.

## INTERROGATORIES

1.      State the name and address of the person(s) answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed.

2.      Describe any and all policies of insurance which you contend cover or may cover the allegations set forth in Plaintiff's complaint, detailing as to such policies the name of the insurer, the number of the policy, the available limits of liability, and the name and address of the custodian of the policy.

3.      State the date that Defendant first received any notice from Plaintiff and/or the Insured concerning a claim for benefits under the Policy as a result of the Loss.

4.      Identify all persons, believed or known by you, your agents, or attorneys to have any knowledge concerning any of the issues raised in the pleadings, specifying the subject matter about which the witness has knowledge.

5.      State whether you have obtained any statements (oral, written and/or recorded) from any witness, the dates any such witness statements were taken, by whom any such witness statements were taken, and who has present possession, custody and control of any such statements.

6.      Does the coverage/denial letter specifically cite to each and every Policy provision and all facts upon which you are relying in connection with your decision to deny, or otherwise not make full payment to Plaintiff?   If your answer is anything other than an unqualified affirmative, identify all other Policy provisions and facts upon which you are relying for your denial or partial payment of Plaintiff's Invoice.

7.      Do you contend that all or any portion of the Loss is not covered by the Policy(ies) issued by you?  Unless your answer is an unqualified negative, please set forth the specific amounts that you contend are not covered, and for each such amount, all facts, including exclusions or other provisions of the Policy(ies), supporting your contention that no coverage exists.

8.      State each and every policy provision and all facts related to each upon which you are relying in connection with your decision to deny, or otherwise not make full payment to Plaintiff, on Plaintiff's Invoice.

9.      With reference to each of your affirmative defenses raised in this lawsuit, please describe all facts upon which you rely to substantiate such affirmative defense, including identification of all witnesses to each such fact.

10.     With reference to each of your affirmative defenses raised in this lawsuit, please describe all documents and electronically stored information upon which you rely to substantiate such affirmative defense.

11.     Identify all persons involved on your behalf in determining whether to pay Plaintiff's Invoice.  For each person identified, identify the person's employer and explain the role of each person identified in determining whether to pay Plaintiff's Invoice.

12.     To the extent your decision to deny payment of Plaintiff's invoice or to fail to pay the entire amount of Plaintiff's Invoice stemmed from facts you derived from evaluating the Insured's Loss (meaning the part of the Insured's claim that he\she did not assign to Plaintiff), state all facts regarding the Insured's Loss and/or your investigation of the Insured's Loss, upon which you relied in making your coverage determination involving Plaintiff's Invoice.

13.     Identify each document sent from Defendant, to Plaintiff and/or Insured in reference to the Loss involved herein, including the date sent, and the name of the individual who sent said communication.

14.     Regarding the Loss, identify each person, who on behalf of Defendant, inspected the Insured Property, including their field of expertise and date of each inspection.

15.     With regard to any third parties (including all adjusters including your direct employees, independent contractors, and all other persons or entities) who provided services, analysis, adjusting, or otherwise rendered opinions to you in adjusting or handling your determination of whether to pay Plaintiff's Invoice, please identify as to Plaintiff's Invoice:  (a) the name of the individual(s) who hired/retained the third party on behalf of the Defendant; (b) the date and nature of the services provided by each third party; (c) all documents you provided to such third party; and (d) all documents such third party provided to you.

16.     Did the Defendant request the Plaintiff and/or Insured to perform any post loss duties for the subject claim, including to submit to an Examination Under Oath, to submit a sworn proof of loss, to permit inspection, etc.

17.     If your answer to the preceding interrogatory was yes, please state for each request, the exact request made, the date of the request, whether the request was written or oral, and what did the Plaintiff and/or Insured do in response to said request.

18.     Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit?  If so, state and name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place and substance of each statement.

19.     State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody or control of, any estimate, model, plat, map, drawing, motion picture, videotape, or photograph pertaining to any fact or issue involved in this lawsuit; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

20.     List all amounts that Defendant has paid to Plaintiff and/or the Insured regarding the Loss.  State the date each payment was made and what each payment was for.

21.     If an inspection of the Insured Property was performed within the past ten (10) years on the Insured Property, state the nature of the inspection, the name and address of any person who performed the inspection, the date of the inspection, and whether any written reports or communications were prepared in connection with the inspection and tests, and whether any photographs or video was taken.

22.     Identify all insurance claims made by the Insured over the past ten (10) years.  For each claim, identify the date of the claim, the amount of the claim, the insurance carrier, the policy number, the basis of the claim, and how the claim was resolved (e.g., payment, denial, still pending).

I have read the foregoing Answers to Interrogatories and do swear that they are true and correct to the best of my knowledge and belief.

X  _____

(Defendant)

STATE OF _____ )

COUNTY OF_____)

SUBSCRIBED and sworn to (or affirmed) before me this \_\_\_\_\_ day of _____, 20\_\_\_\_, by _____,who is [  ] personally known or [  ] produced as identification a _____, and who [  ] did  [did not] take an oath.

Dated this \_\_\_\_ day of _____, 201\_\_\_.

_____

NOTARY PUBLIC,

State of _____

Commission Expires:

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

KDH ARCHITECTURE, INC. a/a/o 921
EVERGREEN DRIVE and 730
WHITEMORE, LLC,

        Plaintiff,                 CASE NO.: 50-2019-CA-010125-XXXX-MB

vs.

WESTERN WORLD INSURANCE
COMPANY,

        Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

    The Defendant, WESTERN WORLD INSURANCE COMPANY ("WWIC"), by and through the undersigned counsel, and pursuant to the Florida Rules of Civil Procedure, moves this Court to dismiss Plaintiff's Complaint. As grounds for this Motion, WWIC states the following:

## I.   FACTUAL BACKGROUND

    1.    Plaintiff's Complaint, supposedly, is based upon an insurance policy issued by WWIC to 921 EVERGREEN DRIVE and 730 WHITEMORE, LLC (the "Insureds").

    2.    According to the Complaint, after a loss purportedly occurred on the Insured's property, the Insureds contracted with Plaintiff for "architectural services." In place of payment for said services, the Insureds then purportedly assigned its right to

1

receive benefits under the insurance policy to Plaintiff.[1]

3.     However, the Complaint fails to attach a copy of the policy, the contract claimed to be breached, in violation of Florida Rule of Civil Procedure 1.130(a).

4.     Accordingly, WWIC requests that the Court dismiss Plaintiff's Complaint.

## II.   <u>ARGUMENT AND CITATION TO AUTHORITY</u>

5.     Florida Rule of Civil Procedure 1.420(b) provides:

> **(b) Involuntary Dismissal.**   Any party may move for dismissal of an action or of any claim against that party for failure of an adverse party to comply with these rules or any order of the court.

6.     Florida Rule of Civil Procedure 1.130(a) provides:

> **(a) Instruments Attached.**   All bonds, notes, bills of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading. . ..

(Emphasis in original)   Courts have not hesitated to enforce this rule.   Its requirements are not merely procedural niceties, nor technicalities.

7.     In *Safeco Ins. Co. of Am. v. Ware,* 401 So. 2d 1129 (Fla. 4th DCA 1981), an insured sued an insurer for damages arising out of an automobile accident.   The lawsuit was based on an insurance policy.   But, the insured failed to attach a copy of that policy to the complaint.   The insurer moved to dismiss pursuant to Rule 1.130.   The trial court struck the insurer's motion as frivolous.   It then proceeded to enter a default judgment against the insurer.   The insurer appealed.

8.     The Fourth District Court of Appeal reversed the judgment and remanded

---

[1] *See Complaint* at ¶ 17 (the purported "Assignment" is attached to Plaintiff's Complaint as Exhibit "A").

2

the case to the trial court for further proceedings.  It held the "motion to dismiss was not frivolous; it was perfectly appropriate.  Therefore, the order striking the motion and entering default judgment was erroneous." *Ware,* 401 So. 2d at 1130.  *See also, Walters v. Ocean Gate Phase I Condo.*, 925 So. 2d 440 (Fla. 5th DCA 2006) (a complaint based on a written instrument does not state a cause of action until the instrument or an adequate portion thereof, is attached to or incorporated in the complaint).

9.      Here, the Complaint is based upon the policy.  However, Plaintiff failed to attach a copy of the policy to the Complaint.  Thus, the Complaint fails to state a cause of action as a matter of law.  *Walters,* 925 So. 2d at 440; *Ware,* 401 So. 2d at 1130. Accordingly, Plaintiff's Complaint should be dismissed.

**WHEREFORE**, Defendant, WESTERN WORLD INSURANCE COMPANY, respectfully requests that this Honorable Court issue an Order dismissing Plaintiff's Complaint, and any and all such further relief as this Court may deem just and proper.

BUTLER WEIHMULLER KATZ CRAIG LLP

**TROY J. SEIBERT, ESQ.**
Florida Bar No.:  0084668
tseibert@butler.legal
**MAXWELL H. STAPE, ESQ.**
Florida Bar No.:  1007734
mstape@butler.legal
Secondary: knelson@butler.legal
                    msmalls@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Defendant,*
*Western World Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy hereof has been furnished to:

Kimesha S. Smith, Esq.
Insurance Litigation Group, P.A.
1500 NE 162nd Street
Miami, FL 33162
Serrvice@ILGPA.com
*Attorney for Plaintiff,*
*Kdh Architecture, Inc. a/a/o 921*
*Evergreen Drive and 730*
*Whitemore, LLC*

by E-portal on August 29, 2019.

**TROY J. SEIBERT, ESQ**

Filing # 94969413 E-Filed 08/29/2019 11:49:20 AM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

KDH ARCHITECTURE, INC. a/a/o 921
EVERGREEN DRIVE and 730
WHITEMORE, LLC,

        Plaintiff,                CASE NO.: 50-2019-CA-010125-XXXX-MB

vs.

WESTERN WORLD INSURANCE
COMPANY,

        Defendant.

_____/

**DEFENDANT'S NOTICE OF SERVING**
**FIRST SET OF INTERROGATORIES TO PLAINTIFF**

TO:   Kimesha S. Smith, Esq.
      Insurance Litigation Group, P.A.
      1500 NE 162nd Street
      Miami, FL 33162
      Serrvice@ILGPA.com
      *Attorney for Plaintiff,*
      *Kdh Architecture, Inc. a/a/o 921*
      *Evergreen Drive and 730*
      *Whitemore, LLC*

      Defendant, WESTERN WORLD INSURANCE COMPANY ("WWIC"), by and
through its undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.340,
hereby files its notice of serving First Set of Interrogatories to Plaintiff, KDH
ARCHITECTURE, INC. a/a/o 921 EVERGREEN DRIVE and 730 WHITEMORE, LLC,
numbered 1 through 3, which are to be answered within thirty (30) days after service, by
Plaintiff, in writing and under oath, inserting said answers upon the original and serving
the original on Defendant's counsel pursuant to the Florida Rules of Civil Procedure.

BUTLER WEIHMULLER KATZ CRAIG LLP

_____
**TROY J. SEIBERT, ESQ.**
Florida Bar No.:  0084668
tseibert@butler.legal
**MAXWELL H. STAPE, ESQ.**
Florida Bar No.:  1007734
mstape@butler.legal
Secondary: knelson@butler.legal
                    msmalls@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
*Attorneys for Defendant,*
*Western World Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing <u>Notice</u> has been furnished by e-Portal and that the foregoing <u>Notice</u> and <u>Answers</u> have been furnished to the above-named addressee via e-mail on August 29, 2019.

_____
**TROY J. SEIBERT, ESQ.**

2

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

KDH ARCHITECTURE INC. a/a/o
921 EVERGREEN DRIVE AND 730
WHITEMORE, LLC,

      Plaintiff,                           CASE NO.:  2019-CA-010125

vs.

WESTERN WORLD INSURANCE
COMPANY,

      Defendant.

_____/

### **DEFENDANT'S NOTICE OF SERVING UNVERIFIED ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

TO:   Kimesha S. Smith, Esq.
       Insurance Litigation Group, P.A.
       1500 Northeast 162nd Street
       Miami, FL  33162-4716
       service@ILGPA.COM
       *Counsel for Plaintiff, KDH Architecture, Inc.*
       *a/a/o 921 Evergreen Drive and 730 Whitemore, LLC*

COMES NOW, the Defendant, WESTERN WORLD INSURANCE COMPANY, by and through its undersigned counsel, and files this Notice of Serving its Answers to Plaintiff, KDH ARCHITECTURE INC. a/a/o 921 EVERGREEN DRIVE AND 730 WHITEMORE, LLC 's First Set of Interrogatories propounded on August 9, 2019, numbered one (1) through twenty-two (22).

BUTLER WEIHMULLER KATZ CRAIG LLP

TROY J. SEIBERT, ESQ.
Florida Bar No.:  0084668
tseibert@butler.legal
MAXWELL H. STAPE, ESQ.
Florida Bar No.:  1007734
mstape@butler.legal
Secondary:   msmalls@butler.legal
              knelson@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:   (813) 281-0900
*Counsel for Defendant,*
*Western World Insurance Company*

## CERTIFICATE OF SERVICE

I certify that the foregoing Notice has been furnished by e-Portal and that the foregoing Notice and Answers have been furnished to the above-named addressee via e-mail on September 23, 2019.

TROY J. SEIBERT, ESQ.

2

Filing # 96161072 E-Filed 09/23/2019 06:03:54 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

KDH ARCHITECTURE INC. a/a/o
921 EVERGREEN DRIVE AND 730
WHITEMORE, LLC,

       Plaintiff,                  CASE NO.:  2019-CA-010125

vs.

WESTERN WORLD INSURANCE
COMPANY,

       Defendant.
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## FIRST REQUEST FOR ADMISSIONS

COMES NOW, the Defendant, WESTERN WORLD INSURANCE COMPANY, by and through its undersigned counsel, and responds to Plaintiff, KDH ARCHITECTURE INC. a/a/o 921 EVERGREEN DRIVE AND 730 WHITEMORE, LLC 's First Request for Admissions, certificate of service date August 9, 2019, as follows:

1.     On December 15, 2017, the Insured had an insurance Policy with Defendant that was in full force and effect for the Insured Property located at 921 Evergreen Drive, Lake Park , Florida 33403.

**RESPONSE**:

**Admitted that the Defendant, issued a policy to the named insured covering the property located at 921 Evergreen Drive Lake Park, FL 33403, during the period extending from March 17, 2017, until March 17, 2018; otherwise, denied.**

2.     Damage caused by a sudden and accidental water loss is covered under the Policy.

**<u>RESPONSE</u>**:

**Admitted that the policy speaks for itself; otherwise denied.**

3.    Ensuing damage caused by water is covered under the Policy.

**<u>RESPONSE</u>**:

**Admitted that the policy speaks for itself; otherwise denied.**

4.    Damage caused by water is not expressly excluded from coverage under the Policy.

**<u>RESPONSE</u>**:

**Admitted that the policy speaks for itself; otherwise denied.**

5.    Ensuing damage caused by water is not expressly excluded from coverage under the Policy.

**<u>RESPONSE</u>**:

**Admitted that the policy speaks for itself; otherwise denied.**

6.    Architecture services are covered under the Policy.

**<u>RESPONSE</u>**:

**Admitted that the policy speaks for itself; otherwise denied.**

7.    Defendant was timely notified that the Loss occurred at the Insured Property.

**<u>RESPONSE</u>**:

**Admitted.**

8.    The Insured has complied with all prerequisites for receiving benefits under the Policy for the Loss.

**RESPONSE**:

**Denied.**

       9.     The above-named Defendant is properly named in this lawsuit.

**RESPONSE**:

**Admitted.**

       10.    The Loss that occurred on December 15, 2017 at the Insured Property is a covered loss under the Policy.

**RESPONSE**:

**Admitted that limited coverage was extended to the insured, otherwise denied.**

       11.    Before Plaintiff sued Defendant in this lawsuit, Defendant received Plaintiff's Assignment of Benefits and Plaintiff's Invoice.

**RESPONSE**:

**Admitted that a document titled Assignment of Insurance Benefits was received, otherwise denied.**

       12.    Pursuant to the Assignment of Benefits, the Insured assigned to Plaintiff the right to sue Defendant to collect from Defendant the amount of Plaintiff's Invoice.

**RESPONSE**:

**Admitted that the document Assignment of Insurance Benefits speaks for itself, otherwise denied.**

       13.    Pursuant to the Assignment of Benefits, the Insured assigned to Plaintiff the Insured's right to demand that Defendant pay Plaintiff's Invoice.

**RESPONSE**:

**Admitted that the document Assignment of Insurance Benefits speaks for itself, otherwise denied.**

14.     Plaintiff is an after-loss assignee under the Policy for the services Plaintiff provided to the Insured Property.

**RESPONSE**:

**Admitted that the document Assignment of Insurance Benefits speaks for itself, otherwise denied.**

15.     Through the Assignment of Benefits, the Insured assigned to Plaintiff insurance benefits limited to the services Plaintiff provided to the Insured Property.

**RESPONSE**:

**Admitted that the document Assignment of Insurance Benefits speaks for itself, otherwise denied.**

16.     The signature on the Assignment of Benefits is that of the Insured and/or the Insured's representative.

**RESPONSE**:

**After diligent search, WESTERN WORLD INSURANCE COMPANY is unable to confirm or deny the fact set forth in Plaintiff's Request for Admission No. 16.**

17.     Defendant assigned claim number 137081 to the Loss.

**RESPONSE**:

**Admitted.**

18.     Defendant denied coverage for payment of Plaintiff's Invoice.

**RESPONSE**:

**Denied.**

19.     Prior to Plaintiff suing Defendant in this lawsuit, Defendant had the opportunity to evaluate Plaintiff's Invoice.

**RESPONSE**:

**Denied.**

20.     Defendant's claims file and electronic claim notes are kept in the ordinary course of business.

**RESPONSE**:

**WWIC objects to this request as it seeks bad faith discovery.  Such a request is improper during an underlying contract action.   Moreover, the requested information is irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence.  *State Farm Florida Ins. Co. v. Gallmon, 835* So.2d 389 (Fla. 2d DCA 2003); see also *State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn,* 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).**

21.     Defendant had the opportunity to inspect the Insured Property prior to issuing the insurance Policy to the Insured.

**RESPONSE**:

**WWIC objects to this request as it seeks bad faith discovery.  Such a request is improper during an underlying contract action.   Moreover, the requested information is irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence.  *State Farm Florida Ins. Co. v. Gallmon, 835* So.2d 389 (Fla. 2d DCA 2003); see also *State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn,* 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).**

22.     Defendant inspected the Insured Property prior to the Loss.

**RESPONSE**:

**WWIC objects to this request as it seeks bad faith discovery.  Such a request is improper during an underlying contract action.   Moreover, the requested information is irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence.  *State Farm Florida Ins. Co. v. Gallmon, 835* So.2d 389 (Fla. 2d DCA 2003); see also *State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn,* 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).**

23.     Defendant authored and/or drafted the Policy, and has a true and correct

copy of the Policy in its possession.

**RESPONSE**:

**Admitted.**

24.     Following a covered loss under the Policy, payment may be made to an

architecture company without the consent of the Defendant.

**RESPONSE**:

**Defendant objects to this Request as vague, ambiguous, and unintelligible as a result of Plaintiff's failure to identify the party assumed to be making payment to an unidentified "architecture company."**

BUTLER WEIHMULLER KATZ CRAIG LLP

_____
TROY J. SEIBERT, ESQ.
Florida Bar No.:  0084668
tseibert@butler.legal
MAXWELL H. STAPE, ESQ.
Florida Bar No.:  1007734
mstape@butler.legal
Secondary:   msmalls@butler.legal
                        knelson@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
*Counsel for Defendant,*
*Western World Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

        Kimesha S. Smith, Esq.
        Insurance Litigation Group, P.A.
        1500 Northeast 162nd Street
        Miami, FL  33162-4716
        service@ILGPA.COM
        *Counsel for Plaintiff, KDH Architecture, Inc.*
        *a/a/o 921 Evergreen Drive and 730 Whitemore, LLC*

by eportal on September 23, 2019.

_____

TROY J. SEIBERT, ESQ.

Filing # 96161072 E-Filed 09/23/2019 06:03:54 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

KDH ARCHITECTURE INC. a/a/o
921 EVERGREEN DRIVE AND 730
WHITEMORE, LLC,

      Plaintiff,                       CASE NO.:  2019-CA-010125

vs.

WESTERN WORLD INSURANCE
COMPANY,

      Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## FIRST REQUEST FOR PRODUCTION

COMES NOW, the Defendant, WESTERN WORLD INSURANCE COMPANY, by

and through its undersigned counsel, and responds to Plaintiff, KDH ARCHITECTURE

INC. a/a/o 921 EVERGREEN DRIVE AND 730 WHITEMORE, LLC 's First Request for

Production, certificate of service date August 9, 2019, as follows:

      1.     A certified and complete copy of the Policy that Defendant issued to the

Insured that was in effect on or about December 15, 2017.

**RESPONSE**:

**A certified copy of policy NPP8357671, effective March 17, 2017 through March
17, 2018 will be provided contemporaneously with Defendant's Non-Privileged
Documents Produced Pursuant to this response.**

      2.     All documents reflecting Defendant's inspection(s) of the Insured Property

after December 15, 2017.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege,**

carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

3.    All documents reflecting Defendant's inspection(s) of the Insured Property

before December 15, 2017, covering the preceding five (5) years.

**RESPONSE**:

WWIC objects to this request to the extent that it seeks information which does not pertain to the subject claim no. 137081, as said claim is the only matter at issue in the above-captioned lawsuit.

4.    All documents reflecting Defendant's inspection(s) of the Insured Property

during the Defendant's underwriting of the Insured's Policy.

**RESPONSE**:

WWIC objects to this request as it seeks bad faith discovery.  Such a request is improper during an underlying contract action.  Moreover, the requested documents are irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence.  *State Farm Florida Ins. Co. v. Gallmon,* 835

So.2d 389 (Fla. 2d DCA 2003); *see also State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).

     5.    All documents reflecting Defendant's inspection(s) of the Insured Property during Defendant's underwriting of all insurance policies Defendant issued to the Insured for the Insured Property prior to December 15, 2017.

**RESPONSE**:

**WWIC objects to this request as it seeks bad faith discovery. Such a request is improper during an underlying contract action. Moreover, the requested documents are irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence. *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *see also State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).**

     6.    All photographs and/or videos submitted by Plaintiff to Defendant in any way related to the Loss or Invoice.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association,* 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982). Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012). WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by**

WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

   7. All photographs and/or videos submitted by Defendant to Plaintiff in any

way related to the Loss or Invoice.

<u>**RESPONSE**</u>:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

   8. All photographs and/or videos taken by Defendant in any way related to

the Loss or Invoice.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association,* 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez,* 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982). Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo,* 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez,* 2012 WL 1469963 (Fla. 3d DCA April 30, 2012). WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable. *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson,* 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

9.   All correspondence, emails and all other documents provided by Plaintiff

and/or the Insured, to Defendant in any way related to the Loss or Invoice.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association,* 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez,* 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982). Further, the claim file is not

discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

10.    All correspondence, emails and all other documents provided by Defendant, to Plaintiff and/or the Insured in any way related to the Loss or Invoice.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

11.   All documents reflecting Defendant's efforts to investigate the Loss or Invoice.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).   Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

12.   All documents documenting or supporting Defendant's affirmative defenses, or that Defendant anticipates will support Defendant's reasons for denying or failing to pay the full amount of Plaintiff's Invoice.

**RESPONSE**:

**WWIC has filed a motion to dismiss.  If and when Plaintiff files a valid Complaint, WWIC will assert any and all affirmative defenses in response thereto.**

13.    All documents, including but not limited to estimates, reports, testing, photographs and/or videos created by Defendant, Defendant's adjusters, Defendant's loss consultants, or by any expert retained by Defendant, including but not limited to plumbers and engineers, in any way related to the Loss and/or Plaintiff's Invoice.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).   Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.   *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963). Furthermore, WWIC objects to this request as it is premature. Discovery is ongoing and WWIC will name its experts and provide information regarding same in accordance with this Court's Order requiring the disclosure of testifying witnesses.**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

14.     All documents identified in Defendant's Answers to Plaintiff's First Set of

Interrogatories.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

15.     A current curriculum vitae and all biographical information for all person(s)

who inspected the Insured Property for or on behalf of Defendant following the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile**

*Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963). Furthermore, WWIC objects to this request as it is premature. Discovery is ongoing and WWIC will name its experts and provide information regarding same in accordance with this Court's Order requiring the disclosure of testifying witnesses.

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production

16.    All documents in any way related to the damage caused to the Insured

Property from the alleged Loss.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally,  to  the  extent  that  this  Request  seeks  information  prepared  by

WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

17.    All documents documenting or supporting Plaintiff's claim for collection of its Invoice from Defendant in this lawsuit.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

18.     All documents related to Plaintiff's Invoice or the Insured Property that support how Defendant determined whether to pay Plaintiff's Invoice, and/or how much of Plaintiff's invoice to pay.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.**

19.     All documents reflecting the relationship between Defendant and the adjuster that assisted Defendant in investigating, adjusting, and/or evaluating Plaintiff's Invoice.

**RESPONSE**:

**WWIC objects to this request as it seeks bad faith discovery.  Such a request is improper during an underlying contract action.   Moreover, the requested**

documents are irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence. *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *see also State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).

20.    All documents that support any denials by Defendant of Plaintiff's First Request for Admissions.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido*, 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to its responses to Plaintiff's Request for Admissions.**

21.    All reports relating to the damage the Insured Property sustained during or as a result of the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege,**

carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association*, **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez*, **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).**  **Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo*, **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez*, **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).**

22.    All reports relating to the condition of the Insured Property before the

Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product."** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association*, **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez*, **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo*, **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez*, **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by**

14

WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson,* 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* 153 So.2d 852 (Fla. 3d DCA 1963).

23.    All reports relating to the condition of the Insured Property after the Loss.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association,* 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez,* 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982). Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo,* 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez,* 2012 WL 1469963 (Fla. 3d DCA April 30, 2012). WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson,* 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* 153 So.2d 852 (Fla. 3d DCA 1963).

24.    All documents showing when the Insured notified Defendant of the Loss.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association,* 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez,* 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater*

*Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

25.    All documents showing when Plaintiff notified Defendant of the Loss.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

26.     All electronic claim notes made by or on behalf of Defendant in any way relating to Plaintiff's Invoice, the Loss, or the condition of Insured Property at the time of Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product."** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association,* **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez,* **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).   Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez,* **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.   See** *Ruiz v. Brea,* **489 So.2d 1136 (Fla. 3d DCA 1986);** *Pinellas County v. Carlson,* **242 So.2d 714 (Fla. 1970);** *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* **153 So.2d 852 (Fla. 3d DCA 1963).**

27.     The part of Defendant's claim file that Defendant reasonably expects to rely upon at trial in this action.

**RESPONSE**:

**WWIC objects to this request as discovery is ongoing. Defendant will name its exhibits and provide information regarding same in accordance with this Court's Order requiring the disclosure of trial exhibits.**

28.    The part of Defendant's claim file that Defendant reasonably expects to use at trial in support of its affirmative defenses.

**RESPONSE**:

**WWIC has filed a motion to dismiss.  If and when Plaintiff files a valid Complaint, WWIC will assert any and all affirmative defenses in response thereto. Furthermore, WWIC objects to this request as discovery is ongoing. Defendant will name its exhibits and provide information regarding same in accordance with this Court's Order requiring the disclosure of trial exhibits.**

29.    All documents that Defendant reasonably expects to rely upon at trial in this action.

**RESPONSE**:

**WWIC objects to this request as discovery is ongoing. Defendant will name its exhibits and provide information regarding same in accordance with this Court's Order requiring the disclosure of trial exhibits.**

30.    All documents that Defendant reasonably expects to use at trial in support of its affirmative defenses.

**RESPONSE**:

**WWIC has filed a motion to dismiss.  If and when Plaintiff files a valid Complaint, WWIC will assert any and all affirmative defenses in response thereto. Furthermore, WWIC objects to this request as discovery is ongoing. Defendant will name its exhibits and provide information regarding same in accordance with this Court's Order requiring the disclosure of trial exhibits.**

31.    The part of Defendant's claim file that supports the action taken by Defendant in paying or refusing to pay Plaintiff's Invoice.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,***

**835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association,* **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez,* **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).   Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez,* **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).   WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.   *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986);** *Pinellas County v. Carlson,* **242 So.2d 714 (Fla. 1970);** *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* **153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.**

32.     All documents that support the action taken by Defendant in paying or

refusing to pay Plaintiff's Invoice.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.   The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product."** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association,* **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez,* **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).   Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez,* **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).   WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by**

WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.

33.     All estimates prepared by Defendant in any way related to the amount

claimed by Plaintiff in this action and/or to Plaintiff's Invoice.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido*, 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank*, 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

34.     All estimates prepared by architecture companies that Defendant may use

to support its reason for non-payment or partial payment of Plaintiff's Invoice.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982). Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012). WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable. *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.**

35. All estimates prepared by adjusters, contractors, loss consultants, or any

other person or entity for Defendant, that are in any way related to the amount claimed

by Plaintiff in this action and/or to Plaintiff's invoice.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v.**

*Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

36.   All estimates prepared by adjusters, contractors, loss consultants, or any other person or entity for Defendant, that Defendant may use to support its reason for non-payment or partial payment of Plaintiff's invoice.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

37.     All documents Defendant provided to the person(s) who investigated, adjusted or otherwise evaluated Plaintiff's Invoice or the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product."** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association,* **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez,* **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982). Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez,* **2012 WL 1469963 (Fla. 3d DCA April 30, 2012). WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.** *See Ruiz v. Brea,* **489 So.2d 1136 (Fla. 3d DCA 1986);** *Pinellas County v. Carlson,* **242 So.2d 714 (Fla. 1970);** *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* **153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

38.     All documents reflecting any communication between Defendant, and any of Defendant's agents, independent adjusters, plumbers, engineers or other representatives, in any way related to Plaintiff's Invoice or the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case**

presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association,* 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez,* 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982). Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo,* 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez,* 2012 WL 1469963 (Fla. 3d DCA April 30, 2012). WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable. *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson,* 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

39.    All underwriting documents in any way relating to the condition of the Insured Property before the Loss.

**RESPONSE**:

WWIC objects to this request as it seeks bad faith discovery. Such a request is improper during an underlying contract action. Moreover, the requested documents are irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence. *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *see also State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn,* 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).

40.    The underwriting file kept by Defendant regarding the Insured Property dating from the inception of Defendant's Policy on the Insured Premises through the present time.

**RESPONSE**:

**WWIC objects to this request as it seeks bad faith discovery.  Such a request is improper during an underlying contract action.   Moreover, the requested documents are irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence.  *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *see also State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).**

41.    All insurance applications the Insured submitted to Defendant regarding the Insured Property.

**RESPONSE**:

**WWIC objects to this request as it seeks bad faith discovery.  Such a request is improper during an underlying contract action.   Moreover, the requested documents are irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence.  *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *see also State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).**

42.    All documents containing any facts supporting any of Defendant's affirmative defenses.

**RESPONSE**:

**WWIC has filed a motion to dismiss.  If and when Plaintiff files a valid Complaint, WWIC will assert any and all affirmative defenses in response thereto.**

43.    All documents containing any facts supporting any of Defendant's reasons for failing to pay and/or reducing the amount paid to Plaintiff for Plaintiff's Invoice.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine.  Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case**

presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.

44.   All documents supporting any allegation or contention by Defendant that Plaintiff's Invoice is related to damages involving a prior claim made by Insured or prior damage sustained by an Insured.

**RESPONSE**:

WWIC objects to this request to the extent that it seeks information which does not pertain to the subject claim no. 137081, as said claim is the only matter at issue in the above-captioned lawsuit.

45.   All documents supporting any allegation or contention by Defendant that Plaintiff's Invoice is related to damages involving a subsequent claim made by Insured or subsequent damage sustained by an Insured.

**RESPONSE**:

WWIC objects to this request to the extent that it seeks information which does not pertain to the subject claim no. 137081, as said claim is the only matter at issue in the above-captioned lawsuit.

46.     All documents supporting any allegation or contention by Defendant that the Insured's damages from the Loss are related to damages involving a prior claim made by Insured or prior damage sustained by an Insured.

**RESPONSE**:

**WWIC objects to this request to the extent that it seeks information which does not pertain to the subject claim no. 137081, as said claim is the only matter at issue in the above-captioned lawsuit.**

47.     All documents supporting any allegation or contention by Defendant that related to damages involving a subsequent claim made by Insured or subsequent damage sustained by an Insured.

**RESPONSE**:

**WWIC objects to this request to the extent that it seeks information which does not pertain to the subject claim no. 137081, as said claim is the only matter at issue in the above-captioned lawsuit.**

48.     All signed sworn proofs of loss submitted by the Insured to Defendant regarding the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." _State Farm Florida Ins. Co. v. Gallmon_, 835 So.2d 389 (Fla. 2d DCA 2003); _Kindl v. United Services Automobile Association_, 49 So.3d 807 (Fla. 2d DCA 2003); _Gov't Employees Ins. Co. v. Rodriguez_, 960 So.2d 794 (Fla. 3d DCA 2007); _see also State Farm Fire & Casualty Co. v. Valido_, 662 So.2d 1012 (Fla. 3d DCA 1995); _U.S. Fire Ins. Co. v. Clearwater Oaks Bank_, 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to _Nationwide Insurance Co. of Fla. v. Demmo_, 57 So.3d 982 (Fla. 2d DCA 2011), and _State Farm Florida Ins. Co. v. Ramirez_, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

49.    Complete and legible copies of all building permits and all other records obtained from the county or other municipality, applicable to the Insured Property covering a five year span prior to the Loss.

**RESPONSE**:

**WWIC objects to this request as it seeks bad faith discovery.  Such a request is improper during an underlying contract action.   Moreover, the requested documents are irrelevant to this case, and not reasonably calculated to lead to the discovery of admissible evidence.  *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *see also State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So.2d 633, 637-38 (Fla. 2nd DCA 2008).**

50.    All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving a Prior Claim made by Insured or prior damage sustained by an Insured.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater***

28

*Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo*, **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez*, **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.**

51.    All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving a Subsequent Claim made by Insured or subsequent damage sustained by an Insured.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product."** *State Farm Florida Ins. Co. v. Gallmon*, **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association*, **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez*, **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo*, **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez*, **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d**

714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.**

52.    All documents evidencing all payments made by Defendant to the Insured and/or for the Insured's benefit involving the claim for the same date of Loss alleged in the Complaint filed in this action.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.**

53.     All correspondence and documents between Defendant and any third parties, excluding Defendant's attorney, in any way related to (1) the condition of the Insured Property before the Loss; or (2) the damage to the Insured Property sustained during the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association,* 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez,* 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).   Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo,* 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez,* 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.   *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson,* 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* 153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

54.     All reports relating to Plaintiff's Invoice or to the damages sustained to Insured Property during or as a result of the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain**

WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

55.    All documents showing or pertaining to any repairs made to the Insured Property by or on behalf of the Insured prior to the Loss, including but not limited to repair invoices, estimates, canceled checks, credit card receipts, contracts for repair, receipts, certificates of completion, notices of commencement, special assessment notices, payment logs, building permits and building permit applications.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine.  Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the

foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.

56.    All documents showing or pertaining to any repairs made to the Insured Property by or on behalf of the Insured after the Loss, including but not limited to repair invoices, estimates, canceled checks, credit card receipts, contracts for repair, receipts, certificates of completion, notices of commencement, special assessment notices, payment logs, building permits and building permit applications.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.2d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852

**(Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

57.   All transcripts of any Examinations Under Oath given or provided by the

Insured regarding the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product."** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association,* **49 So.2d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez,* **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez,* **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.** *See Ruiz v. Brea,* **489 So.2d 1136 (Fla. 3d DCA 1986);** *Pinellas County v. Carlson,* **242 So.2d 714 (Fla. 1970);** *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* **153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

58.   All transcripts of any Examinations Under Oath given or provided by

anyone besides the Insured regarding the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege,**

carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association*, **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez*, **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).** **Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo*, **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez*, **2012 WL 1469963 (Fla. 3d DCA April 30, 2012). WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.** *See Ruiz v. Brea*, **489 So.2d 1136 (Fla. 3d DCA 1986);** *Pinellas County v. Carlson*, **242 So.2d 714 (Fla. 1970);** *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, **153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production.**

59.    All recorded statements given or provided by the Insured regarding the Loss. This request seeks a copy of the recording itself, not Defendant's transcript of the recorded statement.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law. The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association*, **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez*, **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).   Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance*

*Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; none.

60.    All recorded statements given or provided by anyone besides the Insured regarding the Loss.  This request seeks a copy of the recording itself, not Defendant's transcript of the recorded statement.

**RESPONSE**:

WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product." *State Farm Florida Ins. Co. v. Gallmon*, 835 So.2d 389 (Fla. 2d DCA 2003); *Kindl v. United Services Automobile Association*, 49 So.3d 807 (Fla. 2d DCA 2003); *Gov't Employees Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. 3d DCA 2007); *see also State Farm Fire & Casualty Co. v. Valido,* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982).  Further, the claim file is not discoverable in this breach of contract action pursuant to *Nationwide Insurance Co. of Fla. v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011), and *State Farm Florida Ins. Co. v. Ramirez*, 2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.

Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.  *See Ruiz v. Brea*, 489 So.2d 1136 (Fla. 3d DCA 1986); *Pinellas County v. Carlson*, 242 So.2d 714 (Fla. 1970); *Motor Union (Aviation) Orion Ins. Co. v. Levenson*, 153 So.2d 852 (Fla. 3d DCA 1963).

Subject to and without waiving the foregoing objections; none.

61.     All Coverage Letters sent by Defendant to the Insured in any way related

to the Loss.

**RESPONSE**:

**WWIC objects to this Request to the extent it seeks Attorney-Client privilege, carrier work product and/or information protected by the work product doctrine. Moreover, WWIC objects to this Request to the extent the Plaintiff seeks to obtain WWIC'S entire claim file regarding the subject claim as it is contrary to Florida law.  The "materials are either irrelevant to the first-party dispute that this case presents or are privileged work product."** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003);** *Kindl v. United Services Automobile Association,* **49 So.3d 807 (Fla. 2d DCA 2003);** *Gov't Employees Ins. Co. v. Rodriguez,* **960 So.2d 794 (Fla. 3d DCA 2007);** *see also State Farm Fire & Casualty Co. v. Valido,* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982).   Further, the claim file is not discoverable in this breach of contract action pursuant to** *Nationwide Insurance Co. of Fla. v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011), and** *State Farm Florida Ins. Co. v. Ramirez,* **2012 WL 1469963 (Fla. 3d DCA April 30, 2012).  WWIC relies on the foregoing cases in support of its objection.**

**Additionally, to the extent that this Request seeks information prepared by WWIC'S consulting experts and/or the production of documents prepared by WWIC'S consulting experts said documents are not discoverable.   See** *Ruiz v. Brea,* **489 So.2d 1136 (Fla. 3d DCA 1986);** *Pinellas County v. Carlson,* **242 So.2d 714 (Fla. 1970);** *Motor Union (Aviation) Orion Ins. Co. v. Levenson,* **153 So.2d 852 (Fla. 3d DCA 1963).**

**Subject to and without waiving the foregoing objections; WWIC refers Plaintiff to Defendant's Non-Privileged Documents Produced Pursuant to Plaintiff's Request for Production. Specifically, WWIC refers Plaintiff to its correspondence dated January 31, 2018, and the subject policy.**

BUTLER WEIHMULLER KATZ CRAIG LLP

_____

TROY J. SEIBERT, ESQ.
Florida Bar No.:  0084668
tseibert@butler.legal
MAXWELL H. STAPE, ESQ.
Florida Bar No.:  1007734
mstape@butler.legal
Secondary:   msmalls@butler.legal
                    knelson@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:   (813) 281-0900
*Counsel for Defendant,*
*Western World Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy hereof has been furnished to:

> Kimesha S. Smith, Esq.
> Insurance Litigation Group, P.A.
> 1500 Northeast 162nd Street
> Miami, FL  33162-4716
> service@ILGPA.COM
> *Counsel for Plaintiff, KDH Architecture, Inc.*
> *a/a/o 921 Evergreen Drive and 730 Whitemore, LLC*

by e-Portal on September 23, 2019.

_____

TROY J. SEIBERT, ESQ.

Filing # 96161072 E-Filed 09/23/2019 06:03:54 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

KDH ARCHITECTURE INC. a/a/o
921 EVERGREEN DRIVE AND 730
WHITEMORE, LLC,

      Plaintiff,                CASE NO.:  2019-CA-010125

vs.

WESTERN WORLD INSURANCE
COMPANY,

      Defendant.

_____/

**DEFENDANT'S NOTICE OF FILING PRIVILEGE LOG**
**IN RESPONSE TO PLAINTIFF'S REQUEST TO PRODUCE**

      COMES NOW the Defendant, WESTERN WORLD INSURANCE COMPANY

("WWIC"), by and through its undersigned counsel, and serves this Notice of Filing its

Privilege Log.  This Privilege Log will be used in support of Defendant's Response to

Plaintiffs' First Request to Produce.

| Bates Range[1] | | Date | Summary | Author | Recipient | Privilege Asserted |
|---|---|---|---|---|---|---|
| WWIC-000001 | WWIC-000004 | 6/6/2018 | Claim Notes | WWIC | N/A | Carrier Work Product[2] |

_____

[1] The Bates Ranges correspond to the following Bates label prefix: WWIC_;
[2] As used herein, the phrase "Carrier Work Product; Proprietary" refers to the protection established by, but not necessarily limited to, the following cases:  *See Nationwide Ins. Co. of Fla. v. Demmo,* 57 So. 3d 982 (Fla. 2d DCA 2011); *Seminole Cas. Ins. Co. v. Mastrominas,* 6 So. 3d 1256, 1258 (Fla. 2d DCA 2009); *State Farm Florida Ins. Co. v. Ramirez,* 86 So. 3d 1198 (Fla. 3d DCA 2012); *State Farm Fire and Cas. Co. v. Valido,* 662 So. 2d 1012 (Fla. 3d DCA 1995); *State Farm Florida Ins. Co. v. Aloni,* 101 So. 3d 412 (Fla. 4th DCA 2012); *State Farm Mutual Automobile Insurance Co. v. Tranchese,* 49 So. 3d 809, 810 (Fla. 4th DCA 2010); *Travelers Indem. Co. of Connecticut v Attorney's Title Ins.Fund, Inc.,* 2015 WL 6869365 (M.D. Fla. Nov. 9, 2015).

| Bates Range[1] | | Date | Summary | Author | Recipient | Privilege Asserted |
|---|---|---|---|---|---|---|
| WWIC-000015 | WWIC-000017 | 3/17/2017 | Policy Documents | WWIC | 921 Evergreen and 730 Whitmore, LLC | Carrier Work Product |
| WWIC-000030 | WWIC-000030 | 3/17/2017 | Internal Form | WWIC | N/A | Carrier Work Product |
| WWIC-000032 | WWIC-000032 | 5/8/2018 | Internal Form | WWIC | N/A | Carrier Work Product |
| WWIC-000034 | WWIC-000034 | 4/19/2018 | Internal Form | WWIC | | Carrier Work Product |
| WWIC-000036 | WWIC-000036 | 2/21/2018 | Email | WWIC | Team One Adjusting Services, LLC | Carrier Work Product |
| WWIC-000042 | WWIC-000042 | 2/2/2018 | Email | Team One Adjusting Services, LLC | WWIC | Carrier Work Product |
| WWIC-000043 | WWIC-000045 | 1/3/2018 | Letter | Team One Adjusting Services, LLC | WWIC | Carrier Work Product |
| WWIC-0000046 | WWIC-000087 | 12/28/2017 | Photographs *Redacted* | Team One Adjusting Services, LLC | WWIC | Carrier Work Product |
| WWIC-000089 | WWIC-000090 | 12/28/2017 | Report | Team One Adjusting Services, LLC | WWIC | Carrier Work Product |
| WWIC-000091 | WWIC-000091 | 12/19/2017 | Report | All4One Plumbing, Inc. | WWIC | Carrier Work Product |
| WWIC-000092 | WWIC-000092 | 12/19/2017 | Diagram | All4One Plumbing, Inc. | WWIC | Carrier Work Product |

| Bates Range[1] | | Date | Summary | Author | Recipient | Privilege Asserted |
|---|---|---|---|---|---|---|
| WWIC-000093 | WWIC-000094 | 12/14/2017 | Invoice | All4One Plumbing, Inc. | WWIC | Carrier Work Product |
| WWIC-000107 | WWIC-000107 | 12/19/2017 | Email | Team One Adjusting Services, LLC | WWIC | Carrier Work Product |
| WWIC-000124 | WWIC-000124 | 4/3/2018 | Email | Team One Adjusting Services, LLC | Steve Livingston, WWIC | Carrier Work Product |
| WWIC-000125 | WWIC-000156 | 12/20/2017 | Draft Estimate | Team One Adjusting Services, LLC | WWIC | Carrier Work Product |
| WWIC-000157 | WWIC-000157 | 3/19/2018 | Email | Steve Livingston, WWIC | Team One Adjusting Services, LLC | Carrier Work Product |
| WWIC-000158 | WWIC-000158 | 3/12/2018 | Email | Team One Adjusting Services, LLC | Steve Livingston, WWIC | Carrier Work Product |
| WWIC-000159 | WWIC-000161 | 3/12/2018 | Report | Team One Adjusting Services, LLC | Steve Livingston, LLC | Carrier Work Product |
| WWIC-000162 | WWIC-000162 | 3/12/2018 | Statement of Loss | Team One Adjusting Services, LLC | Steve Livingston, WWIC | Carrier Work Product |
| WWIC-000163 | WWIC-000194 | 12/20/2017 | Draft Estimate | Team One Adjusting Services, LLC | Steve Livingston, WWIC | Carrier Work Product |
| WWIC-000196 | WWIC-000237 | 12/28/2017 | Photographs *Redacted* | Team One Adjusting Services, LLC | WWIC | Carrier Work Product |
| WWIC-000238 | WWIC-000240 | 12/21/2017 | ISO Report | ISO Claimsearch | WWIC | Carrier Work Product |

| Bates Range[1] | | Date | Summary | Author | Recipient | Privilege Asserted |
|---|---|---|---|---|---|---|
| WWIC-000357 | WWIC-000357 | 3/29/2018 | Email | Team One Adjusting Services, LLC | Team One Adjusting Services, LLC | Carrier Work Product |
| WWIC-000365 | WWIC-000365 | 2/22/2018 | Internal Form | WWIC | N/A | Carrier Work Product |
| WWIC-000366 | WWIC-000366 | 1/31/2018 | Internal Form | WWIC | N/A | Carrier Work Product |
| WWIC-000367 | WWIC-000368 | 1/3/2018 | Email Chain | WWIC | Team One Adjusting Services, LLC | Carrier Work Product |
| WWIC-000369 | WWIC-000369 | 1/4/2018 | Internal Form | WWIC | N/A | Carrier Work Product |
| WWIC-000370 | WWIC-000372 | 12/21/2017 | ISO Report | ISO Claimsearch | WWIC | Carrier Work Product |
| WWIC-000373 | WWIC-000375 | 12/21/2017 | ISO Report | ISO Claimsearch | WWIC | Carrier Work Product |
| WWIC-000376 | WWIC-000378 | 12/18/2017 | Internal Summary | WWIC | N/A | Carrier Work Product |
| WWIC-000379 | WWIC-000380 | 12/19/2017 | Letter | WWIC | Team One Adjusting Services, LLC | Carrier Work Product |
| WWIC-000385 | WWIC-000386 | 12/19/2017 | Email | WWIC | WWIC | Carrier Work Product |
| WWIC-000388 | WWIC-000389 | 12/18/2017 | Email | WWIC | Team One Adjusting Services, LLC | Carrier Work Product |

BUTLER WEIHMULLER KATZ CRAIG LLP

**TROY J. SEIBERT, ESQ.**
Florida Bar No.:  0084668
tseibert@butler.legal
**MAXWELL H. STAPE, ESQ.**
Florida Bar No.:  1007734
mstape@butler.legal
Secondary:    knelson@butler.legal
                      msmalls@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Defendant,*
*Western World Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Kimesha S. Smith, Esq.
Insurance Litigation Group, P.A.
1500 Northeast 162nd Street
Miami, FL  33162-4716
service@ILGPA.COM
*Counsel for Plaintiff, KDH Architecture, Inc.*
*a/a/o 921 Evergreen Drive and 730 Whitemore, LLC*

by eportal on September 23, 2019.

**TROY J. SEIBERT, ESQ.**

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION
CASE NO.: 50-2019-CA-010125

KDH ARCHITECTURE INC.,
a/a/o 921 Evergreen Drive and 730 Whitemore, LLC,

     *Plaintiff,*

vs.

WESTERN WORLD INSURANCE COMPANY,
     *Defendant.*
_____/

## PLAINTIFF'S MOTION FOR EXTENSION OF TIME
## TO RESPOND TO DEFENDANT'S DISCOVERY REQUESTS

     Plaintiff, KDH Architecture, Inc. a/a/o 921 Evergreen Drive and 730 Whitemore, LLC, by and through undersigned counsel, seeks an extension of time to respond to Defendant's Interrogatories, ("Discovery Requests"), including any applicable objections, and states:

     1.     On or about August 29, 2019, Defendant served Discovery Requests upon Plaintiff.

     2.     Due to a heavy litigation schedule, the undersigned counsel respectfully requests an extension of time to serve responses to the Discovery Requests, including any applicable objections.

     3.     The undersigned certifies that a good faith effort to resolve the matters set forth herein has been, or due to time constraints will be, made prior to the setting of a hearing on this motion.

     4.     No party will be prejudiced by the granting of this motion.

     WHEREFORE, Plaintiff, KDH Architecture, Inc. a/a/o 921 Evergreen Drive and 730 Whitemore, LLC, respectfully requests that this Court extend the time for Plaintiff to respond to Defendant's discovery requests, including any applicable objections.

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that the foregoing document is being served on October 03, 2019, via an automatic email generated by the Florida Courts E-Filing Portal to: **Troy J Seibert, Esq.,** Butler Weihmuller Katz Craig LLP, (tseibert@butler.legal, knelson@butler.legal, msmalls@butler.legal).

INSURANCE LITIGATION GROUP, P.A.
<u>Attorney for Plaintiff</u>
1500 NE 162nd Street
Miami, Florida 33162
Telephone:     (786) 529-0090
Facsimile:      (866) 239-9520
E-Mail: service@ILGPA.com


By:      /s/ Faith D. Everett
        FAITH D. EVERETT, ESQ.
        FL Bar No. 96339

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.: 50-2019-CA-010125

KDH ARCHITECTURE INC.,
a/a/o 921 Evergreen Drive and 730 Whitemore, LLC,

 Plaintiff,

vs.

WESTERN WORLD INSURANCE
COMPANY,

 Defendant.
_____ /

### AGREED ORDER ON PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANT'S DISCOVERY REQUESTS

**THIS CAUSE** having come before this Court on Plaintiff's Motion for Extension of Time to Respond to Defendant's discovery requests, and this Court, being fully advised in the premises, and having been advised of the agreement of counsel, it is hereby:

**ORDERED** that Plaintiff's Motion for Extension of Time to Respond to Interrogatories and Request for Production, is **GRANTED**.  Plaintiff shall have until November 7, 2019 to serve discovery responses to Defendant's discovery request, including any applicable objections.

**DONE and ORDERED** in Palm Beach County, on the 10th day of October , 2019.

50-2019-CA-010125-XXXX-MB    10/10/2019

James L. Martz    Judge

50-2019-CA-010125-XXXX-MB    10/10/2019
James L. Martz
Judge

C    C    :    Troy  J  Seibert,  Esq.  (tseibert@butler.legal,  knelson@butler.legal, msmalls@butler.legal)

Faith D. Everett, Esq. (faith@ilgpa.com, service@ilgpa.com, discovery@ilgpa.com)

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION
CASE NO.:   50-2019-CA-010125

KDH ARCHITECTURE INC. A/A/O
921 EVERGREEN DRIVE AND 730 WHITEMORE, LLC
    *Plaintiff,*

v.

WESTERN WORLD INSURANCE COMPANY,
    *Defendant.*
_____/

### PLAINTIFF'S NOTICE OF SERVING ANSWERS TO INTERROGATORIES

    Plaintiff, KDH ARCHITECTURE INC., by and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.340, hereby serves answers to the interrogatories that Defendant propounded upon Plaintiff on August 29, 2019.

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that the foregoing document is being served on November 4, 2019 via an automatic email generated by the Florida Courts E-Filing Portal to: **Troy J Seibert, Esq.,** Butler Weihmuller Katz Craig LLP, (tseibert@butler.legal, knelson@butler.legal, msmalls@butler.legal).

INSURANCE LITIGATION GROUP, P.A.
<u>Attorney for Plaintiff</u>
1500 NE 162nd Street
Miami, Florida 33162
Telephone:    (786) 529-0090
Facsimile:    (866) 239-9520
E-Mail: service@ilgpa.com

By:    */s/ Jennifer A. Ramage*
        JENNIFER A. RAMAGE, ESQ.
        FL Bar No. 86808

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

KDH ARCHITECTURE, INC. a/a/o 921
EVERGREEN DRIVE and 730
WHITEMORE, LLC,

      Plaintiff,               CASE NO.: 50-2019-CA-010125-XXXX-MB

vs.

WESTERN WORLD
INSURANCE COMPANY,

      Defendant.

_____/

**DEFENDANT, WESTERN WORLD INSURANCE COMPANY'S MOTION TO STRIKE
PLAINTIFF'S CLAIM FOR ATTORNEY'S FEES**

COMES NOW, Defendant, WESTERN WORLD INSURANCE COMPANY ("WWIC"), by and through its undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.140(f) files this Motion to Strike.  As grounds therefore, WWIC states as follows:

**I.  SUMMARY**

This action was filed on August 5, 2019, after both House Bill No. 7065 and House Bill No. 337 became law.  Accordingly, Florida Statute § 627.7152 and Florida Statute § 57.105 controls claims for attorney fees by Plaintiff in this action and Plaintiff's claim for attorney's fees in this action pursuant to Florida Statute § 627.428 must be stricken from Plaintiff's Complaint.

**II.   STATEMENT OF FACTS**

1.    On August 5, 2019, KDH ARCHITECTURE, INC. ("Plaintiff") filed a one count Complaint against WWIC alleging breach of contract.  Plaintiff's Complaint

1

asserts that WWIC breached an insurance contract issued to 921 EVERGREEN DRIVE and 730 WHITEMORE, LLC, (the "Insureds"), who assigned their rights under the insurance contract to Plaintiff for services performed at the Insureds' property.[1]

2.     Plaintiff alleges that Plaintiff "is entitled to a reasonable attorney's fee pursuant to Section 627.428, Florida Statutes."[2]

3.     Moreover, Plaintiff demands judgment against WWIC for attorney fees pursuant to Florida Statute § 627.428 or in the alternative, Florida Statute § 626.9373.[3]

III.   **MEMORANDUM OF LAW**

A.   ***Standard for Motion to Strike***

Florida Rule of Civil Procedure 1.140(f) provides that "[a] party may move to strike or the court may strike redundant, immaterial, impertinent or scandalous matter from any pleading at any time."

B.   ***Paragraph Twenty-Eight, along with the "Wherefore" Clause Contained within Plaintiff's Complaint must be stricken because Florida Statute § 627.7152 and Florida Statute § 57.105 controls claims for attorney fees by Plaintiff in this action***

Florida Statute § 627.7152 states in pertinent part, as follows:

\*\*\*

(10) Notwithstanding any other provision of law, in a suit related to an assignment agreement for post-loss claims arising under a residential or commercial property insurance policy, attorney fees and costs may be recovered by an assignee only under s. 57.105 and this subsection.

\*\*\*

---

[1] *See* Plaintiff's Complaint at ¶¶ 12-29.

[2] *Id.* at ¶ 28.

[3] *See id.* at page 5, 'WHEREFORE' Clause.

2

(13) This section applies to an assignment agreement executed on or after July 1, 2019.[4]

\*\*\*

Fla. Stat. § 627.7152 went into effect on July 1, 2019. Subsection (10) of § 627.7152 removes the application of section § 627.428 to Assignment of Benefit lawsuits. Subsection (13) of § 627.7152 states that the statute applies only to assignment agreements executed on or after July 1, 2019; however, a late addition to Laws 2019, c. 2019-58, § 23, provides in pertinent part:

\*\*\*

Section 23. Notwithstanding subsection (13) of section 627.7152, as created by HB 7065, 2019 Regular Session, subsection (10) of that section is effective upon becoming a law.[5]

\*\*\*

Subsection (10) of § 627.7152 became law when House Bill No. 337 was signed by the governor on May 23, 2019. Therefore, subsection (10) of Florida Statute § 627.7152 was effective on May 23, 2019; not July 1, 2019, which is the effective date of the act.

Regardless, since this action was filed on August 5, 2019, after both House Bill No. 7065 and House Bill No. 337 became law, Florida Statute § 627.7152 and Florida Statute § 57.105 controls claims for attorney fees by Plaintiff in this action and Plaintiff's claim for attorney's fees pursuant to Florida Statute § 627.428 pled in paragraph twenty-eight, along with the "Wherefore" clause within Plaintiff's Complaint must be stricken as a matter of law.

---

[4] *See* House Bill No. 7065, attached hereto as Exhibit 1, pages 6-7.

[5] *See* House Bill No. 337, attached hereto as Exhibit 2, page 28.

**WHEREFORE**, the Defendant, WESTERN WORLD INSURANCE COMPANY, respectfully requests that this Honorable Court enter an Order granting its Motion to Strike paragraph twenty-eight, along with the "Wherefore" clause within Plaintiff's Complaint, and all other relief as this Court deems just and proper.

BUTLER WEIHMULLER KATZ CRAIG LLP

**TROY J. SEIBERT, ESQ.**
Florida Bar No.:  0084668
tseibert@butler.legal
**MAXWELL H. STAPE, ESQ.**
Florida Bar No.:  1007734
mstape@butler.legal
Secondary:   msmalls@butler.legal
                    vfernandez@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Defendant,*
*Western World Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to

Kimesha S. Smith, Esq.
Insurance Litigation Group, P.A.
1500 NE 162nd Street
Miami, FL 33162
Serrvice@ILGPA.com
*Attorney for Plaintiff,*
*Kdh Architecture, Inc. a/a/o 921*
*Evergreen Drive and 730*
*Whitemore, LLC*

by E-Portal on November 7, 2019.

_____

**MAXWELL H. STAPE, ESQ.**



CHAPTER 2019-57

Committee Substitute for
Committee Substitute for House Bill No. 7065

An act relating to insurance assignment agreements; creating s. 627.7152, F.S.; providing definitions; providing requirements and limitations for property insurance assignment agreements; providing a burden of proof; providing that an assignment agreement does not affect managed repair arrangements under a property insurance policy; providing that an assignment agreement does not confer or create authority to adjust, negotiate, or settle a claim without authorization under part VI of chapter 626; providing that an acceptance by an assignee of an assignment agreement is a waiver by the assignee and its subcontractors of certain claims against an insured; specifying an insured's payment obligations under an assignment agreement; requiring notice of intent to initiate litigation; specifying requirements for such notice; requiring a written response to the notice of intent to initiate litigation; specifying requirements for such response; providing for an award of reasonable attorney fees for certain claims arising under an assignment agreement; providing for an award of reasonable attorney fees following a voluntary dismissal under certain circumstances; requiring the court to stay proceedings under certain circumstances; directing the Office of Insurance Regulation to require insurers to report specified data; requiring the Financial Services Commission to adopt rules; providing applicability; creating s. 627.7153, F.S.; defining the term "assignment agreement"; authorizing insurers to make available property insurance policies restricting the assignment of post-loss benefits under certain conditions; requiring annual notice of coverage options; requiring a written or electronic waiver under certain circumstances; requiring the office to approve a waiver form; providing applicability; amending s. 627.422, F.S.; providing that residential or commercial property insurance policies may not prohibit the assignment of post-lost benefits; providing an exception; prohibiting Citizens Property Insurance Corporation from implementing rate changes for certain policies; providing an exception; requiring certain rate filings to include specified information; requiring the corporation to inform policyholders of certain information; providing severability; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1.   Section 627.7152, Florida Statutes, is created to read:

627.7152   Assignment agreements.—

(1)   As used in this section, the term:

(a)   "Assignee" means a person who is assigned post-loss benefits through an assignment agreement.

1

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(b)   "Assignment agreement" means any instrument by which post-loss benefits under a residential property insurance policy or commercial property insurance policy, as that term is defined in s. 627.0625(1), are assigned or transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property.

(c)   "Assignor" means a person who assigns post-loss benefits under a residential property insurance policy or commercial property insurance policy to another person through an assignment agreement.

(d)   "Disputed amount" means the difference between the assignee's presuit settlement demand and the insurer's presuit settlement offer.

(e)   "Judgment obtained" means damages recovered, if any, but does not include any amount awarded for attorney fees, costs, or interest.

(f)   "Presuit settlement demand" means the demand made by the assignee in the written notice of intent to initiate litigation as required by paragraph (9)(a).

(g)   "Presuit settlement offer" means the offer made by the insurer in its written response to the notice of intent to initiate litigation as required by paragraph (9)(b).

(2)(a)   An assignment agreement must:

1.   Be in writing and executed by and between the assignor and the assignee.

2.   Contain a provision that allows the assignor to rescind the assignment agreement without a penalty or fee by submitting a written notice of rescission signed by the assignor to the assignee within 14 days after the execution of the agreement, at least 30 days after the date work on the property is scheduled to commence if the assignee has not substantially performed, or at least 30 days after the execution of the agreement if the agreement does not contain a commencement date and the assignee has not begun substantial work on the property.

3.   Contain a provision requiring the assignee to provide a copy of the executed assignment agreement to the insurer within 3 business days after the date on which the assignment agreement is executed or the date on which work begins, whichever is earlier. Delivery of the copy of the assignment agreement to the insurer may be made:

a.   By personal service, overnight delivery, or electronic transmission, with evidence of delivery in the form of a receipt or other paper or electronic acknowledgement by the insurer; or

b.   To the location designated for receipt of such agreements as specified in the policy.

2

CODING: Words stricken are deletions; words underlined are additions.

4.   Contain a written, itemized, per-unit cost estimate of the services to be performed by the assignee.

5.   Relate only to work to be performed by the assignee for services to protect, repair, restore, or replace a dwelling or structure or to mitigate against further damage to such property.

6.   Contain the following notice in 18-point uppercase and boldfaced type:

YOU ARE AGREEING TO GIVE UP CERTAIN RIGHTS YOU HAVE UNDER YOUR INSURANCE POLICY TO A THIRD PARTY, WHICH MAY RESULT IN LITIGATION AGAINST YOUR INSURER. PLEASE READ AND UNDERSTAND THIS DOCUMENT BEFORE SIGNING IT. YOU HAVE THE RIGHT TO CANCEL THIS AGREEMENT WITHOUT PEN-ALTY WITHIN 14 DAYS AFTER THE DATE THIS AGREEMENT IS EXECUTED, AT LEAST 30 DAYS AFTER THE DATE WORK ON THE PROPERTY IS SCHEDULED TO COMMENCE IF THE ASSIGNEE HAS NOT SUBSTANTIALLY PERFORMED, OR AT LEAST 30 DAYS AFTER THE EXECUTION OF THE AGREEMENT IF THE AGREEMENT DOES NOT CONTAIN A COMMENCEMENT DATE AND THE ASSIGNEE HAS NOT BEGUN SUBSTANTIAL WORK ON THE PROPERTY. HOWEVER, YOU ARE OBLIGATED FOR PAYMENT OF ANY CONTRACTED WORK PERFORMED BEFORE THE AGREEMENT IS RESCINDED. THIS AGREEMENT DOES NOT CHANGE YOUR OBLIGATION TO PERFORM THE DUTIES REQUIRED UNDER YOUR PROPERTY INSURANCE POLICY.

7.   Contain a provision requiring the assignee to indemnify and hold harmless the assignor from all liabilities, damages, losses, and costs, including, but not limited to, attorney fees, should the policy subject to the assignment agreement prohibit, in whole or in part, the assignment of benefits.

(b)   An assignment agreement may not contain:

1.   A penalty or fee for rescission under subparagraph (a)2.;

2.   A check or mortgage processing fee;

3.   A penalty or fee for cancellation of the agreement; or

4.   An administrative fee.

(c)   If an assignor acts under an urgent or emergency circumstance to protect property from damage and executes an assignment agreement to protect, repair, restore, or replace property or to mitigate against further damage to the property, an assignee may not receive an assignment of post-loss benefits under a residential property insurance policy in excess of the greater of $3,000 or 1 percent of the Coverage A limit under such policy. For

3
CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

purposes of this paragraph, the term "urgent or emergency circumstance" means a situation in which a loss to property, if not addressed immediately, will result in additional damage until measures are completed to prevent such damage.

(d)   An assignment agreement that does not comply with this subsection is invalid and unenforceable.

(3)   In a claim arising under an assignment agreement, an assignee has the burden to demonstrate that the insurer is not prejudiced by the assignee's failure to:

(a)   Maintain records of all services provided under the assignment agreement.

(b)   Cooperate with the insurer in the claim investigation.

(c)   Provide the insurer with requested records and documents related to the services provided, and permit the insurer to make copies of such records and documents.

(d)   Deliver a copy of the executed assignment agreement to the insurer within 3 business days after executing the assignment agreement or work has begun, whichever is earlier.

(4)   An assignee:

(a)   Must provide the assignor with accurate and up-to-date revised estimates of the scope of work to be performed as supplemental or additional repairs are required.

(b)   Must perform the work in accordance with accepted industry standards.

(c)   May not seek payment from the assignor exceeding the applicable deductible under the policy unless the assignor has chosen to have additional work performed at the assignor's own expense.

(d)   Must, as a condition precedent to filing suit under the policy, and, if required by the insurer, submit to examinations under oath and recorded statements conducted by the insurer or the insurer's representative that are reasonably necessary, based on the scope of the work and the complexity of the claim, which examinations and recorded statements must be limited to matters related to the services provided, the cost of the services, and the assignment agreement.

(e)   Must, as a condition precedent to filing suit under the policy, and, if required by the insurer, participate in appraisal or other alternative dispute resolution methods in accordance with the terms of the policy.

4
CODING: Words stricken are deletions; words underlined are additions.

(5)   An assignment agreement and this section do not modify or eliminate any term, condition, or defense relating to any managed repair arrangement provided in the policy.

(6)   An assignment agreement does not transfer or create any authority to adjust, negotiate, or settle any portion of a claim to a person or entity not authorized to adjust, negotiate, or settle a claim on behalf of an assignor or a claimant under part VI of chapter 626.

(7)(a)   Notwithstanding any other provision of law, and except as provided in paragraph (b), acceptance by an assignee of an assignment agreement is a waiver by the assignee and its subcontractors of claims against a named insured for payments arising from the assignment agreement. The assignee and its subcontractors may not collect or attempt to collect money from an insured, maintain any action at law against an insured, claim a lien on the real property of an insured, or report an insured to a credit agency for payments arising from the assignment agreement. Such waiver remains in effect after the assignment agreement is rescinded by the assignor or after a determination that the assignment agreement is invalid.

(b)   A named insured is responsible for the payment of all of the following:

1.   Any deductible amount due under the policy.

2.   Any betterment ordered and performed that is approved by the named insured.

3.   Any contracted work performed before the assignment agreement is rescinded.

(8)   The assignee shall indemnify and hold harmless the assignor from all liabilities, damages, losses, and costs, including, but not limited to, attorney fees, should the policy subject to the assignment agreement prohibit, in whole or in part, the assignment of benefits.

(9)(a)   An assignee must provide the named insured, insurer, and the assignor, if not the named insured, with a written notice of intent to initiate litigation before filing suit under the policy. Such notice must be served by certified mail, return receipt requested, or electronic delivery at least 10 business days before filing suit, but may not be served before the insurer has made a determination of coverage under s. 627.70131. The notice must specify the damages in dispute, the amount claimed, and a presuit settlement demand. Concurrent with the notice, and as a precondition to filing suit, the assignee must provide the named insured, insurer, and the assignor, if not the named insured, a detailed written invoice or estimate of services, including itemized information on equipment, materials, and supplies; the number of labor hours; and, in the case of work performed, proof that the work has been performed in accordance with accepted industry standards.

CODING: Words stricken are deletions; words underlined are additions.

(b)   An insurer must respond in writing to the notice within 10 business days after receiving the notice specified in paragraph (a) by making a presuit settlement offer or requiring the assignee to participate in appraisal or other method of alternative dispute resolution under the policy. An insurer must have a procedure for the prompt investigation, review, and evaluation of the dispute stated in the notice and must investigate each claim contained in the notice in accordance with the Florida Insurance Code.

(10)   Notwithstanding any other provision of law, in a suit related to an assignment agreement for post-loss claims arising under a residential or commercial property insurance policy, attorney fees and costs may be recovered by an assignee only under s. 57.105 and this subsection.

(a)   If the difference between the judgment obtained by the assignee and the presuit settlement offer is:

1.   Less than 25 percent of the disputed amount, the insurer is entitled to an award of reasonable attorney fees.

2.   At least 25 percent but less than 50 percent of the disputed amount, no party is entitled to an award of attorney fees.

3.   At least 50 percent of the disputed amount, the assignee is entitled to an award of reasonable attorney fees.

(b)   If the insurer fails to inspect the property or provide written or oral authorization for repairs within 7 calendar days after the first notice of loss, the insurer waives its right to an award of attorney fees under this subsection. If the failure to inspect the property or provide written or oral authorization for repairs is the result of an event for which the Governor had declared a state of emergency under s. 252.36, factors beyond the control of the insurer which reasonably prevented an inspection or written or oral authorization for repairs, or the named insured's failure or inability to allow an inspection of the property after a request by the insurer, the insurer does not waive its right to an award of attorney fees under this subsection.

(c)   If an assignee commences an action in any court of this state based upon or including the same claim against the same adverse party that such assignee has previously voluntarily dismissed in a court of this state, the court may order the assignee to pay the attorney fees and costs of the adverse party resulting from the action previously voluntarily dismissed. The court shall stay the proceedings in the subsequent action until the assignee has complied with the order.

(11)   This section does not apply to:

(a)   An assignment, transfer, or conveyance granted to a subsequent purchaser of the property with an insurable interest in the property following a loss;

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

(b)   A power of attorney under chapter 709 that grants to a management company, family member, guardian, or similarly situated person of an insured the authority to act on behalf of an insured as it relates to a property insurance claim; or

(c)   Liability coverage under a property insurance policy.

(12)   The office shall require each insurer to report by January 30, 2022, and each year thereafter data on each residential and commercial property insurance claim paid in the prior calendar year under an assignment agreement. The Financial Services Commission shall adopt by rule a list of the data required, which must include specific data about claims adjustment and settlement timeframes and trends, grouped by whether litigated or not litigated and by loss adjustment expenses.

(13)   This section applies to an assignment agreement executed on or after July 1, 2019.

Section 2.   Section 627.7153, Florida Statutes, is created to read:

627.7153   Policies restricting assignment of post-loss benefits under a property insurance policy.—

(1)   As used in this section, the term "assignment agreement" has the same meaning as provided in s. 627.7152.

(2)   An insurer may make available a policy that restricts in whole or in part an insured's right to execute an assignment agreement only if all of the following conditions are met:

(a)   The insurer makes available to the insured or potential insured at the same time the same coverage under a policy that does not restrict the right to execute an assignment agreement.

(b)   Each restricted policy is available at a lower cost than the unrestricted policy.

(c)   The policy prohibiting assignment in whole is available at a lower cost than any policy prohibiting assignment in part.

(d)   Each restricted policy include on its face the following notice in 18-point uppercase and boldfaced type:

THIS POLICY DOES NOT ALLOW THE UNRESTRICTED ASSIGNMENT OF POST-LOSS INSURANCE BENEFITS. BY SELECTING THIS POLICY, YOU WAIVE YOUR RIGHT TO FREELY ASSIGN OR TRANSFER THE POST-LOSS PROPERTY INSURANCE BENEFITS AVAILABLE UNDER THIS POLICY TO A THIRD PARTY OR TO OTHERWISE FREELY ENTER INTO AN ASSIGNMENT AGREEMENT AS THE

7

TERM IS DEFINED IN SECTION 627.7152 OF THE FLORIDA STA-
TUTES.

(3)   The insurer shall notify the insured at least annually of the coverage
options the insurer makes available under this section. Such notice must be
part of and attached to the notice of premium.

(4)   A named insured must reject a fully assignable policy in writing or
electronically. The rejection of a fully assignable policy shall be made on a
form approved by the office. The form must state that the policy restricts the
assignment of benefits. The heading of the form shall be in 18-point
uppercase and boldfaced type and state:

YOU ARE ELECTING TO PURCHASE AN INSURANCE POLICY THAT
RESTRICTS THE ASSIGNMENT OF BENEFITS UNDER THE POLICY
IN WHOLE OR IN PART. PLEASE READ CAREFULLY.

(5)   This section applies to a policy issued or renewed on or after July 1,
2019.

Section 3.   Section 627.422, Florida Statutes, is amended to read:

627.422   Assignment of policies or post-loss benefits.—A policy may be
assignable, or not assignable, as provided by its terms. Any such assignment
shall entitle the insurer to deal with the assignee as the owner or pledgee of
the policy in accordance with the terms of the assignment, until the insurer
has received at its home office written notice of termination of the
assignment or pledge or written notice by or on behalf of some other person
claiming some interest in the policy in conflict with the assignment.

(1)   LIFE OR HEALTH INSURANCE POLICIES.—Subject to its terms
relating to assignability, any life or health insurance policy under the terms
of which the beneficiary may be changed upon the sole request of the
policyowner may be assigned either by pledge or transfer of title, by an
assignment executed by the policyowner alone and delivered to the insurer,
whether or not the pledgee or assignee is the insurer. Any such assignment
shall entitle the insurer to deal with the assignee as the owner or pledgee of
the policy in accordance with the terms of the assignment, until the insurer
has received at its home office written notice of termination of the
assignment or pledge or written notice by or on behalf of some other person
claiming some interest in the policy in conflict with the assignment.

(2)   POST-LOSS BENEFITS UNDER CERTAIN PROPERTY INSUR-
ANCE POLICIES.—A residential or commercial property insurance policy
may not prohibit the assignment of post-loss benefits unless it complies with
s. 627.7153.

8
CODING: Words stricken are deletions; words underlined are additions.

Section 4.   <u>Citizens Property Insurance Corporation may not implement rate changes in 2019 for DP-3 and HO-3 policies unless the rate filing reflects projected rate savings from this act. Such rate filing must include an exhibit demonstrating the impact of this act on indicated rates for DP-3 and HO-3 policies. Citizens Property Insurance Corporation shall provide policyholders with details on the projected rate savings from this act.</u>

Section 5.   <u>If any provision of this act or its application to any person or circumstance is held invalid, the invalidity does not affect the remaining provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.</u>

Section 6.   This act shall take effect July 1, 2019.

Approved by the Governor May 23, 2019.

Filed in Office Secretary of State May 23, 2019.

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

EXHIBIT 2

## CHAPTER 2019-58

Committee Substitute for
Committee Substitute for House Bill No. 337

An act relating to courts; amending s. 26.012, F.S.; revising the appellate jurisdiction of circuit courts; providing for future repeal; amending s. 28.35, F.S.; modifying calculation of total combined budgets of the clerks of the court; providing a definition; amending s. 28.36, F.S.; providing for modified revenue projection relating to proposed budget of clerks of the court; providing a definition; amending s. 28.37, F.S.; providing for deposit of certain funds into specified trust funds or General Revenue Fund; amending s. 27.52, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 28.24, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 28.2401, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 28.241, F.S.; providing for deposit of certain fees into General Revenue Fund; requiring specified filing fees for appeals from certain county courts; amending s. 34.01, F.S.; providing for deposit of certain fees into the General Revenue Fund; increasing the jurisdictional limit for actions at law by county courts on specified dates; requiring the State Courts Administrator to submit a report containing certain recommendations and reviews to the Governor and the Legislature by a specified date; amending s. 34.041, F.S.; providing county court civil filing fees for claims of specified values; providing for distribution of the fees; amending s. 44.108, F.S.; prohibiting the levy of certain fees for mediation services in certain cases; amending s. 45.035, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 55.505, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 61.14, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 316.193, F.S., providing for deposit of certain fees into General Revenue Fund; amending s. 318.14, F.S., providing for deposit of certain fees into General Revenue Fund; amending s. 318.15, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 318.18, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 322.245, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 327.35, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 327.73, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 379.401, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 713.24, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 721.83, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 744.365, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 744.3678, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 766.104, F.S.; providing for deposit of certain fees into General Revenue Fund; amending s. 938.05, F.S.; providing for deposit of certain fees into General Revenue Fund; providing for

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

retroactivity; providing applicability; requiring a certain Legislative review; providing effective dates.

Be It Enacted by the Legislature of the State of Florida:

Section 1.   Effective January 1, 2020, subsection (1) of section 26.012, Florida Statutes, is amended to read:

26.012   Jurisdiction of circuit court.—

(1)   Circuit courts shall have jurisdiction of appeals from county courts except:

(a)   Appeals of county court orders or judgments where the amount in controversy is greater than $15,000. This paragraph is repealed on January 1, 2023.

(b)   Appeals of county court orders or judgments declaring invalid a state statute or a provision of the State Constitution. and except

(c)   Orders or judgments of a county court which are certified by the county court to the district court of appeal to be of great public importance and which are accepted by the district court of appeal for review.

Circuit courts shall have jurisdiction of appeals from final administrative orders of local government code enforcement boards.

Section 2.   Paragraph (f) of subsection (2) of section 28.35, Florida Statutes, is amended to read:

28.35   Florida Clerks of Court Operations Corporation.—

(2)   The duties of the corporation shall include the following:

(f)   Approving the proposed budgets submitted by clerks of the court pursuant to s. 28.36. The corporation must ensure that the total combined budgets of the clerks of the court do not exceed the total estimated revenues from fees, service charges, costs, and fines for court-related functions available for court-related expenditures as determined by the most recent Revenue Estimating Conference, plus the total of unspent budgeted funds for court-related functions carried forward by the clerks of the court from the previous county fiscal year and plus the balance of funds remaining in the Clerk of the Court Trust Fund after the transfer of funds to the General Revenue Fund required pursuant to s. 28.37(3)(b). The corporation may amend any individual clerk of the court budget to ensure compliance with this paragraph and must consider performance measures, workload performance standards, workload measures, and expense data before modifying the budget. As part of this process, the corporation shall:

1.   Calculate the minimum amount of revenue necessary for each clerk of the court to efficiently perform the list of court-related functions specified in

CODING: Words stricken are deletions; words underlined are additions.

paragraph (3)(a). The corporation shall apply the workload measures appropriate for determining the individual level of review required to fund the clerk's budget.

2.   Prepare a cost comparison of similarly situated clerks of the court, based on county population and numbers of filings, using the standard list of court-related functions specified in paragraph (3)(a).

3.   Conduct an annual base budget review and an annual budget exercise examining the total budget of each clerk of the court. The review shall examine revenues from all sources, expenses of court-related functions, and expenses of noncourt-related functions as necessary to determine that court-related revenues are not being used for noncourt-related purposes. The review and exercise shall identify potential targeted budget reductions in the percentage amount provided in Schedule VIII-B of the state's previous year's legislative budget instructions, as referenced in s. 216.023(3), or an equivalent schedule or instruction as may be adopted by the Legislature.

4.   Identify those proposed budgets containing funding for items not included on the standard list of court-related functions specified in paragraph (3)(a).

5.   Identify those clerks projected to have court-related revenues insufficient to fund their anticipated court-related expenditures.

6.   Use revenue estimates based on the official estimate for funds <u>from fees, service charges, costs, and fines for court-related functions</u> accruing to the clerks of the court made by the Revenue Estimating Conference<u>, as well as any unspent budgeted funds for court-related functions carried forward by the clerks of the court from the previous county fiscal year and the balance of funds remaining in the Clerk of the Court Trust Fund after the transfer of funds to the General Revenue Fund required pursuant to s. 28.37(3)(b)</u>. ~~The total combined budgets of the clerks of the court may not exceed the revenue estimates established by the most recent Revenue Estimating Conference.~~

7.   Identify pay and benefit increases in any proposed clerk budget, including, but not limited to, cost of living increases, merit increases, and bonuses.

8.   Identify increases in anticipated expenditures in any clerk budget that exceeds the current year budget by more than 3 percent.

9.   Identify the budget of any clerk which exceeds the average budget of similarly situated clerks by more than 10 percent.

<u>For the purposes of this paragraph, the term "unspent budgeted funds for court-related functions" means undisbursed funds included in the clerks of the courts budgets for court-related functions established pursuant to this section and s. 28.36.</u>

3

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

Section 3.   Paragraph (b) of subsection (2) of section 28.36, Florida Statutes, is amended to read:

28.36   Budget procedure.—There is established a budget procedure for the court-related functions of the clerks of the court.

(2)   Each proposed budget shall further conform to the following requirements:

(b)   The proposed budget must be balanced such that the total of the estimated revenues available equals or exceeds the total of the anticipated expenditures. Such revenues include revenue projected to be received from fees, service charges, costs, and fines for court-related functions during the fiscal period covered by the budget, plus the total of unspent budgeted funds for court-related functions carried forward by the clerk of the court from the previous county fiscal year and plus the portion of the balance of funds remaining in the Clerk of the Court Trust Fund after the transfer of funds to the General Revenue Fund required pursuant to s. 28.37(3)(b) which has been allocated to each respective clerk of the court by the Clerk of Courts Corporation. For the purposes of this paragraph, the term "unspent budgeted funds for court-related functions" means undisbursed funds included in the clerk of the courts' budget for court related functions established pursuant to s. 28.35 and this section. The anticipated expenditures must be itemized as required by the corporation.

Section 4.   Subsection (3) of section 28.37, Florida Statutes, is amended to read:

28.37   Fines, fees, service charges, and costs remitted to the state.—

(3)(a)   Each year, no later than January 25, 2015, and each January 25 thereafter for the previous county fiscal year, the clerks of court, in consultation with the Florida Clerks of Court Operations Corporation, shall remit to the Department of Revenue for deposit in the Clerks of the Court Trust Fund General Revenue Fund the cumulative excess of all fines, fees, service charges, and costs retained by the clerks of the court, plus any funds received by the clerks of the court from the Clerks of the Court Trust Fund under s. 28.36(3), which exceed the amount needed to meet their authorized budget amounts established under s. 28.35.

(b)1.   No later than February 1, 2020, the Department of Revenue shall transfer from the Clerks of the Court Trust Fund to the General Revenue Fund the sum of the cumulative excess of all fines, fees, service charges, and costs submitted by the clerks of court pursuant to subsection (2) and the cumulative excess of all fines, fees, service charges, and costs remitted by the clerks of court pursuant to paragraph (a) in excess of $10 million.

2.   No later than February 1, 2021, the Department of Revenue shall transfer from the Clerks of the Court Trust Fund to the General Revenue Fund not less than 50 percent of the sum of the cumulative excess of all fines,

4

fees, service charges, and costs submitted by the clerks of court pursuant to subsection (2) and the cumulative excess of all fines, fees, service charges, and costs remitted by the clerks of court pursuant to paragraph (a); provided however, the balance remaining in the Clerks of Courts Trust Fund after such transfer may not be more than $20 million.

3. No later than February 1, 2022, the Department of Revenue shall transfer from the Clerks of the Court Trust Fund to the General Revenue Fund not less than 50 percent of the sum of the cumulative excess of all fines, fees, service charges, and costs submitted by the clerks of court pursuant to subsection (2) and the cumulative excess of all fines, fees, service charges, and costs remitted by the clerks of court pursuant to paragraph (a); provided however, the balance remaining in the Clerks of Courts Trust Fund after such transfer may not be more than $20 million.

4. No later than February 1, 2023, and each February 1 thereafter, the Department of Revenue shall transfer from the Clerks of the Court Trust Fund to the General Revenue Fund the cumulative excess of all fines, fees, service charges, and costs submitted by the clerks of court pursuant to subsection (2) and the cumulative excess of all fines, fees, service charges, and costs remitted by the clerks of court pursuant to paragraph (a). ~~The Department of Revenue shall transfer from the Clerks of Court Trust Fund to the General Revenue Fund the cumulative excess of all fines, fees, service charges, and costs submitted by the clerks of court pursuant to subsection (2). However, if the official estimate for funds accruing to the clerks of court made by the Revenue Estimating Conference for the current fiscal year or the next fiscal year is less than the cumulative amount of authorized budgets for the clerks of court for the current fiscal year, the Department of Revenue shall retain in the Clerks of the Court Trust Fund the estimated amount needed to fully fund the clerks of court for the current and next fiscal year based upon the current budget established under s. 28.35.~~

Section 5.   Effective upon this act becoming a law and retroactive to July 1, 2008, paragraphs (b) and (d) of subsection (1) of section 27.52, Florida Statutes, are amended to read:

27.52   Determination of indigent status.—

(1)   APPLICATION TO THE CLERK.—A person seeking appointment of a public defender under s. 27.51 based upon an inability to pay must apply to the clerk of the court for a determination of indigent status using an application form developed by the Florida Clerks of Court Operations Corporation with final approval by the Supreme Court.

(b)   An applicant shall pay a $50 application fee to the clerk for each application for court-appointed counsel filed. The applicant shall pay the fee within 7 days after submitting the application. If the applicant does not pay the fee prior to the disposition of the case, the clerk shall notify the court, and the court shall:

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

1. Assess the application fee as part of the sentence or as a condition of probation; or

2. Assess the application fee pursuant to s. 938.29.

(d)   All application fees collected by the clerk under this section shall be transferred monthly by the clerk to the Department of Revenue for deposit in the Indigent Criminal Defense Trust Fund administered by the Justice Administrative Commission, to be used to as appropriated by the Legislature. The clerk may retain 2 percent of application fees collected monthly for administrative costs from which the clerk shall remit $0.20 from each application fee to the Department of Revenue for deposit into the General Revenue Fund prior to remitting the remainder to the Department of Revenue for deposit in the Indigent Criminal Defense Trust Fund.

Section 6.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsections (1), (2), (3), (4), (6), and (8), paragraph (b) of subsection (10), subsections (13), (14), (16), (17), (18), (19), (20), and (25), and paragraph (a) of subsection (26) of section 28.24, Florida Statutes, are amended to read:

28.24   Service charges.—The clerk of the circuit court shall charge for services rendered manually or electronically by the clerk's office in recording documents and instruments and in performing other specified duties. These charges may not exceed those specified in this section, except as provided in s. 28.345.

Charges

(1)   For examining, comparing, correcting, verifying, and certifying transcripts of record in appellate proceedings, prepared by attorney for appellant or someone else other than clerk, per page   5.00, from which the clerk shall remit 0.50 per page to the Department of Revenue for deposit into the General Revenue Fund.

(2)   For preparing, numbering, and indexing an original record of appellate proceedings, per instrument   3.50, from which the clerk shall remit 0.50 per instrument to the Department of Revenue for deposit into the General Revenue Fund.

(3)   For certifying copies of any instrument in the public records   2.00, from which the clerk shall remit 0.50 to the Department of Revenue for deposit into the General Revenue Fund.

(4)   For verifying any instrument presented for certification prepared by someone other than clerk, per page   3.50, from which the clerk shall remit 0.50 per page to the Department of Revenue for deposit into the General Revenue Fund.

(6)   For making microfilm copies of any public records:

6

(a)  16 mm 100′ microfilm roll   42.00, from which the clerk shall remit 4.50 to the Department of Revenue for deposit into the General Revenue Fund.

(b)  35 mm 100′ microfilm roll   60.00, from which the clerk shall remit 7.50 to the Department of Revenue for deposit into the General Revenue Fund.

(c)  Microfiche, per fiche   3.50, from which the clerk shall remit 0.50 to the Department of Revenue for deposit into the General Revenue Fund.

(8)  For writing any paper other than herein specifically mentioned, same as for copying, including signing and sealing   7.00, from which the clerk shall remit 1.00 to the Department of Revenue for deposit into the General Revenue Fund.

(10)  For receiving money into the registry of court:

(b)  Eminent domain actions, per deposit   170.00, from which the clerk shall remit 20.00 per deposit to the Department of Revenue for deposit into the General Revenue Fund.

(13)  Oath, administering, attesting, and sealing, not otherwise provided for herein   3.50, from which the clerk shall remit 0.50 to the Department of Revenue for deposit into the General Revenue Fund.

(14)  For validating certificates, any authorized bonds, each   3.50, from which the clerk shall remit 0.50 each to the Department of Revenue for deposit into the General Revenue Fund.

(16)  For exemplified certificates, including signing and sealing   7.00, from which the clerk shall remit 1.00 to the Department of Revenue for deposit into the General Revenue Fund.

(17)  For authenticated certificates, including signing and sealing   7.00, from which the clerk shall remit 1.00 to the Department of Revenue for deposit into the General Revenue Fund.

(18)(a)  For issuing and filing a subpoena for a witness, not otherwise provided for herein (includes writing, preparing, signing, and sealing) 7.00, from which the clerk shall remit 1.00 to the Department of Revenue for deposit into the General Revenue Fund.

(b)  For signing and sealing only   2.00, from which the clerk shall remit 0.50 to the Department of Revenue for deposit into the General Revenue Fund.

(19)  For approving bond   8.50, from which the clerk shall remit 1.00 to the Department of Revenue for deposit into the General Revenue Fund.

7

CODING: Words stricken are deletions; words underlined are additions.

(20)   For searching of records, for each year's search   2.00, from which the clerk shall remit 0.50 for each year's search to the Department of Revenue for deposit into the General Revenue Fund.

(25)   For sealing any court file or expungement of any record   42.00, from which the clerk shall remit 4.50 to the Department of Revenue for deposit into the General Revenue Fund.

(26)(a)   For receiving and disbursing all restitution payments, per payment   3.50, from which the clerk shall remit 0.50 per payment to the Department of Revenue for deposit into the General Revenue Fund.

Section 7.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (1) of section 28.2401, Florida Statutes, is amended to read:

28.2401   Service charges and filing fees in probate matters.—

(1)   Except when otherwise provided, the clerk may impose service charges or filing fees for the following services or filings, not to exceed the following amounts:

(a)   Fee for the opening of any estate of one document or more, including, but not limited to, petitions and orders to approve settlement of minor's claims; to open a safe-deposit box; to enter rooms and places; for the determination of heirs, if not formal administration; and for a foreign guardian to manage property of a nonresident; but not to include issuance of letters or order of summary administration..........................................$230

(b)   Charge for caveat............................................................................ $40

(c)   Fee for petition and order to admit foreign wills, authenticated copies, exemplified copies, or transcript to record..............................................$230

(d)   Fee for disposition of personal property without administration............................................................................................$230

(e)   Fee for summary administration—estates valued at $1,000 or more....................................................................................................... $340

(f)   Fee for summary administration—estates valued at less than $1,000...........................................................................................................$230

(g)   Fee for formal administration, guardianship, ancillary, curatorship, or conservatorship proceedings.................................................................$395

(h)   Fee for guardianship proceedings of person only......................... $230

(i)   Fee for veterans' guardianship pursuant to chapter 744.............$230

(j)   Charge for exemplified certificates.................................................... $7

8

CODING: Words stricken are deletions; words underlined are additions.

(k)   Fee for petition for determination of incompetency.................... $230

The clerk shall remit $115 of each filing fee collected under paragraphs (a), (c)-(i), and (k) to the Department of Revenue for deposit into the State Courts Revenue Trust Fund <u>and shall remit $15 of each filing fee collected under paragraphs (a), (c), (d), (f), (h), (i) and (k), $1 of each filing fee collected under paragraph (j), $5 of each filing fee collected under paragraph (b), $25 of each filing fee collected under paragraph (e), and $30 of each filing fee collected under paragraph (g) to the Department of Revenue for deposit into the General Revenue Fund</u>.

Section 8.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsections (1) and (2) of section 28.241, Florida Statutes, are amended to read:

28.241   Filing fees for trial and appellate proceedings.—

(1)   Filing fees are due at the time a party files a pleading to initiate a proceeding or files a pleading for relief. Reopen fees are due at the time a party files a pleading to reopen a proceeding if at least 90 days have elapsed since the filing of a final order or final judgment with the clerk. If a fee is not paid upon the filing of the pleading as required under this section, the clerk shall pursue collection of the fee pursuant to s. 28.246.

(a)1.a.   Except as provided in sub-subparagraph b. and subparagraph 2., the party instituting any civil action, suit, or proceeding in the circuit court shall pay to the clerk of that court a filing fee of up to $395 in all cases in which there are not more than five defendants and an additional filing fee of up to $2.50, <u>from which the clerk shall remit $0.50 to the Department of Revenue for deposit into the General Revenue Fund,</u> for each defendant in excess of five. Of the first $200 in filing fees, $195 must be remitted to the Department of Revenue for deposit into the State Courts Revenue Trust Fund, $4 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services and used to fund the contract with the Florida Clerks of Court Operations Corporation created in s. 28.35, and $1 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund audits of individual clerks' court-related expenditures conducted by the Department of Financial Services. By the 10th of each month, the clerk shall submit that portion of the filing fees collected in the previous month which is in excess of one-twelfth of the clerk's total budget to the Department of Revenue for deposit into the Clerks of the Court Trust Fund.

b.   The party instituting any civil action, suit, or proceeding in the circuit court under chapter 39, chapter 61, chapter 741, chapter 742, chapter 747, chapter 752, or chapter 753 shall pay to the clerk of that court a filing fee of up to $295 in all cases in which there are not more than five defendants and an additional filing fee of up to $2.50 for each defendant in excess of five. Of the first $100 in filing fees, $95 must be remitted to the Department of

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

Revenue for deposit into the State Courts Revenue Trust Fund, $4 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services and used to fund the contract with the Florida Clerks of Court Operations Corporation created in s. 28.35, and $1 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund audits of individual clerks' court-related expenditures conducted by the Department of Financial Services.

c.   An additional filing fee of $4 shall be paid to the clerk. The clerk shall remit $3.50 to the Department of Revenue for deposit into the Court Education Trust Fund and shall remit 50 cents to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund clerk education provided by the Florida Clerks of Court Operations Corporation. An additional filing fee of up to $18 shall be paid by the party seeking each severance that is granted, from which the clerk shall remit $3 to the Department of Revenue for deposit into the General Revenue Fund. The clerk may impose an additional filing fee of up to $85, from which the clerk shall remit $10 to the Department of Revenue for deposit into the General Revenue Fund, for all proceedings of garnishment, attachment, replevin, and distress. Postal charges incurred by the clerk of the circuit court in making service by certified or registered mail on defendants or other parties shall be paid by the party at whose instance service is made. Additional fees, charges, or costs may not be added to the filing fees imposed under this section, except as authorized in this section or by general law.

2.a.   Notwithstanding the fees prescribed in subparagraph 1., a party instituting a civil action in circuit court relating to real property or mortgage foreclosure shall pay a graduated filing fee based on the value of the claim.

b.   A party shall estimate in writing the amount in controversy of the claim upon filing the action. For purposes of this subparagraph, the value of a mortgage foreclosure action is based upon the principal due on the note secured by the mortgage, plus interest owed on the note and any moneys advanced by the lender for property taxes, insurance, and other advances secured by the mortgage, at the time of filing the foreclosure. The value shall also include the value of any tax certificates related to the property. In stating the value of a mortgage foreclosure claim, a party shall declare in writing the total value of the claim, as well as the individual elements of the value as prescribed in this sub-subparagraph.

c.   In its order providing for the final disposition of the matter, the court shall identify the actual value of the claim. The clerk shall adjust the filing fee if there is a difference between the estimated amount in controversy and the actual value of the claim and collect any additional filing fee owed or provide a refund of excess filing fee paid.

d.   The party shall pay a filing fee of:

CODING: Words stricken are deletions; words underlined are additions.

(I)   Three hundred and ninety-five dollars in all cases in which the value of the claim is $50,000 or less and in which there are not more than five defendants. The party shall pay an additional filing fee of up to $2.50 for each defendant in excess of five. Of the first $200 in filing fees, $195 must be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund, $4 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services and used to fund the contract with the Florida Clerks of Court Operations Corporation created in s. 28.35, and $1 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund audits of individual clerks' court-related expenditures conducted by the Department of Financial Services;

(II)   Nine hundred dollars in all cases in which the value of the claim is more than $50,000 but less than $250,000 and in which there are not more than five defendants. The party shall pay an additional filing fee of up to $2.50 for each defendant in excess of five. Of the first $705 in filing fees, $700 must be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund, except that the first $1.5 million in such filing fees remitted to the Department of Revenue and deposited into the General Revenue Fund in fiscal year 2018-2019 shall be distributed to the Miami-Dade County Clerk of Court; $4 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services and used to fund the contract with the Florida Clerks of Court Operations Corporation created in s. 28.35; and $1 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund audits of individual clerks' court-related expenditures conducted by the Department of Financial Services; or

(III)   One thousand nine hundred dollars in all cases in which the value of the claim is $250,000 or more and in which there are not more than five defendants. The party shall pay an additional filing fee of up to $2.50 for each defendant in excess of five. Of the first $1,705 in filing fees, $930 must be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund, $770 must be remitted to the Department of Revenue for deposit into the State Courts Revenue Trust Fund, $4 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund the contract with the Florida Clerks of Court Operations Corporation created in s. 28.35, and $1 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund audits of individual clerks' court-related expenditures conducted by the Department of Financial Services.

e.   An additional filing fee of $4 shall be paid to the clerk. The clerk shall remit $3.50 to the Department of Revenue for deposit into the Court Education Trust Fund and shall remit 50 cents to the Department of Revenue for deposit into the Administrative Trust Fund within the

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

Department of Financial Services to fund clerk education provided by the Florida Clerks of Court Operations Corporation. An additional filing fee of up to $18 shall be paid by the party seeking each severance that is granted. The clerk may impose an additional filing fee of up to $85 for all proceedings of garnishment, attachment, replevin, and distress. Postal charges incurred by the clerk of the circuit court in making service by certified or registered mail on defendants or other parties shall be paid by the party at whose instance service is made. Additional fees, charges, or costs may not be added to the filing fees imposed under this section, except as authorized in this section or by general law.

(b)   A party reopening any civil action, suit, or proceeding in the circuit court shall pay to the clerk of court a filing fee set by the clerk in an amount not to exceed $50. For purposes of this section, a case is reopened after all appeals have been exhausted or time to file an appeal from a final order or final judgment has expired. A reopen fee may be assessed by the clerk for any motion filed by any party at least 90 days after a final order or final judgment has been filed with the clerk in the initial case. A reservation of jurisdiction by a court does not cause a case to remain open for purposes of this section or exempt a party from paying a reopen fee. A party is exempt from paying the fee for any of the following:

1.   A writ of garnishment;

2.   A writ of replevin;

3.   A distress writ;

4.   A writ of attachment;

5.   A motion for rehearing filed within 10 days;

6.   A motion for attorney's fees filed within 30 days after entry of a judgment or final order;

7.   A motion for dismissal filed after a mediation agreement has been filed;

8.   A disposition of personal property without administration;

9.   Any probate case prior to the discharge of a personal representative;

10.   Any guardianship pleading prior to discharge;

11.   Any mental health pleading;

12.   Motions to withdraw by attorneys;

13.   Motions exclusively for the enforcement of child support orders;

14.   A petition for credit of child support;

12
CODING: Words stricken are deletions; words underlined are additions.

15.   A Notice of Intent to Relocate and any order issuing as a result of an uncontested relocation;

16.   Stipulations and motions to enforce stipulations;

17.   Responsive pleadings;

18.   Cases in which there is no initial filing fee; or

19.   Motions for contempt.

(c)1.   A party in addition to a party described in sub-subparagraph (a)1.a. who files a pleading in an original civil action in circuit court for affirmative relief by cross-claim, counterclaim, counterpetition, or third-party complaint shall pay the clerk of court a fee of $395. A party in addition to a party described in sub-subparagraph (a)1.b. who files a pleading in an original civil action in circuit court for affirmative relief by cross-claim, counterclaim, counterpetition, or third-party complaint shall pay the clerk of court a fee of $295. The clerk shall deposit the fee into the fine and forfeiture fund established pursuant to s. 142.01.

2.   A party in addition to a party described in subparagraph (a)2. who files a pleading in an original civil action in circuit court for affirmative relief by cross-claim, counterclaim, counterpetition, or third-party complaint shall pay the clerk of court a graduated fee of:

a.   Three hundred and ninety-five dollars in all cases in which the value of the pleading is $50,000 or less;

b.   Nine hundred dollars in all cases in which the value of the pleading is more than $50,000 but less than $250,000; or

c.   One thousand nine hundred dollars in all cases in which the value of the pleading is $250,000 or more.

The clerk shall deposit the fees collected under this subparagraph into the fine and forfeiture fund established pursuant to s. 142.01.

(d)   The clerk of court shall collect a service charge of $10 for issuing an original, a certified copy, or an electronic certified copy of a summons, which the clerk shall remit to the Department of Revenue for deposit into the General Revenue Fund. The clerk shall assess the fee against the party seeking to have the summons issued.

(2)   Upon the institution of any appellate proceeding from any lower court to the circuit court of any such county, including appeals filed by a county or municipality as provided in s. 34.041(5), or from the county or circuit court to an appellate court of the state, the clerk shall charge and collect from the party or parties instituting such appellate proceedings a filing fee not to exceed $280, from which the clerk shall remit $20 to the Department of Revenue for deposit into the General Revenue Fund, for filing a notice of

CODING: Words stricken are deletions; words underlined are additions.

appeal from the county court to the circuit court and, in addition to the filing fee required under s. 25.241 or s. 35.22, $100 for filing a notice of appeal from the <u>county or</u> circuit court to the district court of appeal or to the Supreme Court. If the party is determined to be indigent, the clerk shall defer payment of the fee <u>otherwise required by this subsection</u>.

Section 9.   Effective January 1, 2020, subsection (1) of section 34.01, Florida Statutes, is amended to read:

34.01   Jurisdiction of county court.—

(1)   County courts shall have original jurisdiction:

(a)   In all misdemeanor cases not cognizable by the circuit courts.<s>;</s>

(b)   Of all violations of municipal and county ordinances.<s>;</s>

(c)   Of all actions at law<u>, except those within the exclusive jurisdiction of the circuit courts,</u> in which the matter in controversy does not exceed <s>the sum of $15,000,</s> exclusive of interest, costs, and <u>attorney</u> <s>attorney's</s> fees<u>.</u><s>, except those within the exclusive jurisdiction of the circuit courts; and</s>

<u>1.   If filed on or before December 31, 2019, the sum of $15,000.</u>

<u>2.   If filed on or after January 1, 2020, the sum of $30,000.</u>

<u>3.   If filed on or after January 1, 2023, the sum of $50,000.</u>

(d)   Of disputes occurring in the homeowners' associations as described in s. 720.311(2)(a), which shall be concurrent with jurisdiction of the circuit courts.

<u>By February 1, 2021, the Office of the State Courts Administrator shall submit a report to the Governor, the President of the Senate, and the Speaker of the House of Representatives. The report must make recommendations regarding the adjustment of county court jurisdiction, including, but not limited to, consideration of the claim value of filings in county court and circuit court, case events, timeliness in processing cases, and any fiscal impact to the state as a result of adjusted jurisdictional limits. The clerks of the circuit court and county court shall provide claim value data and necessary case event data to the office to be used in development of the report. The report must also include a review of fees to ensure that the court system is adequately funded and a review of the appellate jurisdiction of the district courts and the circuit courts, including the use of appellate panels by circuit courts.</u>

Section 10.   Effective upon this act becoming a law and retroactive to July 1, 2008, paragraphs (a), (b), (c), and (d) of subsection (1) of section 34.041, Florida Statutes, are amended, and paragraph (e) is added to that subsection, to read:

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

34.041   Filing fees.—

(1)(a)   Filing fees are due at the time a party files a pleading to initiate a proceeding or files a pleading for relief. Reopen fees are due at the time a party files a pleading to reopen a proceeding if at least 90 days have elapsed since the filing of a final order or final judgment with the clerk. If a fee is not paid upon the filing of the pleading as required under this section, the clerk shall pursue collection of the fee pursuant to s. 28.246. Upon the institution of any civil action, suit, or proceeding in county court, the party shall pay the following filing fee, not to exceed:

1.   For all claims less than $100...........................................................$50.

2.   For all claims of $100 or more but not more than $500................$75.

3.   For all claims of more than $500 but not more than $2,500..........$170, from which the clerk shall remit $20 to the Department of Revenue for deposit into the General Revenue Fund.

4.   For all claims of more than $2,500 but not more than $15,000......................................................................................................$295.

5.   For all claims more than $15,000.................................................$395.

6.5.   In addition, for all proceedings of garnishment, attachment, replevin, and distress..............$85, from which the clerk shall remit $10 to the Department of Revenue for deposit into the General Revenue Fund.

7.6.   Notwithstanding subparagraphs 3. and 6. 5., for all claims of not more than $1,000 filed simultaneously with an action for replevin of property that is the subject of the claim.................................................$125.

8.7.   For removal of tenant action....................................................... $180.

The filing fee in subparagraph 7. 6. is the total fee due under this paragraph for that type of filing, and no other filing fee under this paragraph may be assessed against such a filing.

(b)   The first $15 of the filing fee collected under subparagraph (a)4. and the first $10 of the filing fee collected under subparagraph (a)8. subparagraph (a)7. shall be deposited in the State Courts Revenue Trust Fund. By the 10th day of each month, the clerk shall submit that portion of the fees collected in the previous month which is in excess of one-twelfth of the clerk's total budget for the performance of court-related functions to the Department of Revenue for deposit into the Clerks of the Court Trust Fund. An additional filing fee of $4 shall be paid to the clerk. The clerk shall transfer $3.50 to the Department of Revenue for deposit into the Court Education Trust Fund and shall transfer 50 cents to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund clerk education provided by the Florida Clerks of Court Operations Corporation. Postal charges incurred by the clerk of the

CODING: Words stricken are deletions; words underlined are additions.

county court in making service by mail on defendants or other parties shall be paid by the party at whose instance service is made. Except as provided in this section, filing fees and service charges for performing duties of the clerk relating to the county court shall be as provided in ss. 28.24 and 28.241. Except as otherwise provided in this section, all filing fees shall be retained as fee income of the office of the clerk of the circuit court. Filing fees imposed by this section may not be added to any penalty imposed by chapter 316 or chapter 318.

(c)   A party in addition to a party described in paragraph (a) who files a pleading in an original civil action in the county court for affirmative relief by cross-claim, counterclaim, counterpetition, or third-party complaint, or who files a notice of cross-appeal or notice of joinder or motion to intervene as an appellant, cross-appellant, or petitioner, shall pay the clerk of court a fee of $295 if the relief sought by the party under this paragraph exceeds $2,500 but is not more than $15,000 and $395 if the relief sought by the party under this paragraph exceeds $15,000. The clerk shall remit the fee if the relief sought by the party under this paragraph exceeds $2,500 but is not more than $15,000 to the Department of Revenue for deposit into the General Revenue Fund. This fee does not apply if the cross-claim, counterclaim, counterpetition, or third-party complaint requires transfer of the case from county to circuit court. However, the party shall pay to the clerk the standard filing fee for the court to which the case is to be transferred.

(d)   The clerk of court shall collect a service charge of $10 for issuing a summons or an electronic certified copy of a summons, which the clerk shall remit to the Department of Revenue for deposit into the General Revenue Fund. The clerk shall assess the fee against the party seeking to have the summons issued.

(e)   Of the first $200 in filing fees payable under subparagraph (a)5., $195 must be remitted to the Department of Revenue for deposit into the State Courts Revenue Trust Fund, $4 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services and used to fund the contract with the Florida Clerks of Court Operations Corporation created in s. 28.35, and $1 must be remitted to the Department of Revenue for deposit into the Administrative Trust Fund within the Department of Financial Services to fund audits of individual clerks' court-related expenditures conducted by the Department of Financial Services. By the 10th day of each month, the clerk shall submit that portion of the filing fees collected pursuant to this subsection in the previous month which is in excess of one-twelfth of the clerk's total budget to the Department of Revenue for deposit into the Clerks of the Court Trust Fund.

Section 11.   Effective January 1, 2020, subsection (2) of section 44.108, Florida Statutes, is amended to read:

44.108   Funding of mediation and arbitration.—

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(2)   When court-ordered mediation services are provided by a circuit court's mediation program, the following fees, unless otherwise established in the General Appropriations Act, shall be collected by the clerk of court:

(a)   One-hundred twenty dollars per person per scheduled session in family mediation when the parties' combined income is greater than $50,000, but less than $100,000 per year;

(b)   Sixty dollars per person per scheduled session in family mediation when the parties' combined income is less than $50,000; or

(c)   Sixty dollars per person per scheduled session in county court cases involving an amount in controversy not exceeding $15,000.

No mediation fees shall be assessed under this subsection in residential eviction cases, against a party found to be indigent, or for any small claims action. Fees collected by the clerk of court pursuant to this section shall be remitted to the Department of Revenue for deposit into the State Courts Revenue Trust Fund to fund court-ordered mediation. The clerk of court may deduct $1 per fee assessment for processing this fee. The clerk of the court shall submit to the chief judge of the circuit and to the Office of the State Courts Administrator, no later than 30 days after the end of each quarter of the fiscal year, a report specifying the amount of funds collected and remitted to the State Courts Revenue Trust Fund under this section and any other section during the previous quarter of the fiscal year. In addition to identifying the total aggregate collections and remissions from all statutory sources, the report must identify collections and remissions by each statutory source.

Section 12.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (1) and paragraph (c) of subsection (2) of section 45.035, Florida Statutes, are amended to read:

45.035   Clerk's fees.—In addition to other fees or service charges authorized by law, the clerk shall receive service charges related to the judicial sales procedure set forth in ss. 45.031-45.034 and this section:

(1)   The clerk shall receive a service charge of $70, from which the clerk shall remit $10 to the Department of Revenue for deposit into the General Revenue Fund, for services in making, recording, and certifying the sale and title, which service charge shall be assessed as costs and shall be advanced by the plaintiff before the sale.

(2)   If there is a surplus resulting from the sale, the clerk may receive the following service charges, which shall be deducted from the surplus:

(c)   The clerk is entitled to a service charge of $15 for each disbursement of surplus proceeds, from which the clerk shall remit $5 to the Department of Revenue for deposit into the General Revenue Fund.

CODING: Words stricken are deletions; words underlined are additions.

Section 13.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (3) of section 55.505, Florida Statutes, is amended to read:

55.505   Notice of recording; prerequisite to enforcement.—

(3)   No execution or other process for enforcement of a foreign judgment recorded hereunder shall issue until 30 days after the mailing of notice by the clerk and payment of a service charge of up to $42 to the clerk, from which the clerk shall remit $4.50 to the Department of Revenue for deposit into the General Revenue Fund. When an action authorized in s. 55.509(1) is filed, it acts as an automatic stay of the effect of this section.

Section 14.   Effective upon this act becoming a law and retroactive to July 1, 2008, paragraphs (b), (d), (e), and (f) of subsection (6) of section 61.14, Florida Statutes, are amended to read:

61.14   Enforcement and modification of support, maintenance, or alimony agreements or orders.—

(6)

(b)1.   When an obligor is 15 days delinquent in making a payment or installment of support and the amount of the delinquency is greater than the periodic payment amount ordered by the court, the local depository shall serve notice on the obligor informing him or her of:

a.   The delinquency and its amount.

b.   An impending judgment by operation of law against him or her in the amount of the delinquency and all other amounts which thereafter become due and are unpaid, together with costs and a service charge of up to $25, from which the clerk shall remit $17.50 to the Department of Revenue for deposit into the General Revenue Fund, for failure to pay the amount of the delinquency.

c.   The obligor's right to contest the impending judgment and the ground upon which such contest can be made.

d.   The local depository's authority to release information regarding the delinquency to one or more credit reporting agencies.

2.   The local depository shall serve the notice by mailing it by first class mail to the obligor at his or her last address of record with the local depository. If the obligor has no address of record with the local depository, service shall be by publication as provided in chapter 49.

3.   When service of the notice is made by mail, service is complete on the date of mailing.

CODING: Words stricken are deletions; words underlined are additions.

(d)  The court shall hear the obligor's motion to contest the impending judgment within 15 days after the date of filing of the motion. Upon the court's denial of the obligor's motion, the amount of the delinquency and all other amounts that become due, together with costs and a service charge of up to $25<u>, from which the clerk shall remit $17.50 to the Department of Revenue for deposit into the General Revenue Fund</u>, become a final judgment by operation of law against the obligor. The depository shall charge interest at the rate established in s. 55.03 on all judgments for support. Payments on judgments shall be applied first to the current child support due, then to any delinquent principal, and then to interest on the support judgment.

(e)  If the obligor fails to file a motion to contest the impending judgment within the time limit prescribed in paragraph (c) and fails to pay the amount of the delinquency and all other amounts which thereafter become due, together with costs and a service charge of up to $25<u>, from which the clerk shall remit $17.50 to the Department of Revenue for deposit into the General Revenue Fund</u>, such amounts become a final judgment by operation of law against the obligor at the expiration of the time for filing a motion to contest the impending judgment.

(f)1.  Upon request of any person, the local depository shall issue, upon payment of a service charge of up to $25<u>, from which the clerk shall remit $17.50 to the Department of Revenue for deposit into the General Revenue Fund</u>, a payoff statement of the total amount due under the judgment at the time of the request. The statement may be relied upon by the person for up to 30 days from the time it is issued unless proof of satisfaction of the judgment is provided.

2.  When the depository records show that the obligor's account is current, the depository shall record a satisfaction of the judgment upon request of any interested person and upon receipt of the appropriate recording fee. Any person shall be entitled to rely upon the recording of the satisfaction.

3.  The local depository, at the direction of the department, or the obligee in a non-IV-D case, may partially release the judgment as to specific real property, and the depository shall record a partial release upon receipt of the appropriate recording fee.

4.  The local depository is not liable for errors in its recordkeeping, except when an error is a result of unlawful activity or gross negligence by the clerk or his or her employees.

Section 15.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsections (2) and (4) of section 316.193, Florida Statutes, are amended to read:

316.193   Driving under the influence; penalties.—

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(2)(a)   Except as provided in paragraph (b), subsection (3), or subsection (4), any person who is convicted of a violation of subsection (1) shall be punished:

1.   By a fine of:

a.   Not less than $500 or more than $1,000 for a first conviction.

b.   Not less than $1,000 or more than $2,000 for a second conviction; and

2.   By imprisonment for:

a.   Not more than 6 months for a first conviction.

b.   Not more than 9 months for a second conviction.

3.   For a second conviction, by mandatory placement for a period of at least 1 year, at the convicted person's sole expense, of an ignition interlock device approved by the department in accordance with s. 316.1938 upon all vehicles that are individually or jointly leased or owned and routinely operated by the convicted person, when the convicted person qualifies for a permanent or restricted license. The installation of such device may not occur before July 1, 2003.

The portion of a fine imposed in excess of $500 pursuant to sub-subparagraph 1.a. and the portion of a fine imposed in excess of $1,000 pursuant to sub-subparagraph 1.b., shall be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund.

(b)1.   Any person who is convicted of a third violation of this section for an offense that occurs within 10 years after a prior conviction for a violation of this section commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. In addition, the court shall order the mandatory placement for a period of not less than 2 years, at the convicted person's sole expense, of an ignition interlock device approved by the department in accordance with s. 316.1938 upon all vehicles that are individually or jointly leased or owned and routinely operated by the convicted person, when the convicted person qualifies for a permanent or restricted license. The installation of such device may not occur before July 1, 2003.

2.   Any person who is convicted of a third violation of this section for an offense that occurs more than 10 years after the date of a prior conviction for a violation of this section shall be punished by a fine of not less than $2,000 or more than $5,000 and by imprisonment for not more than 12 months. The portion of a fine imposed in excess of $2,500 pursuant to this subparagraph shall be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund. In addition, the court shall order the mandatory placement for a period of at least 2 years, at the convicted person's sole expense, of an ignition interlock device approved by the department in accordance with s. 316.1938 upon all vehicles that are individually or jointly

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

leased or owned and routinely operated by the convicted person, when the convicted person qualifies for a permanent or restricted license. The installation of such device may not occur before July 1, 2003.

3.   Any person who is convicted of a fourth or subsequent violation of this section, regardless of when any prior conviction for a violation of this section occurred, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. However, the fine imposed for such fourth or subsequent violation may be not less than $2,000. The portion of a fine imposed in excess of $1,000 pursuant to this subparagraph shall be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund.

(c)   In addition to the penalties in paragraph (a), the court may order placement, at the convicted person's sole expense, of an ignition interlock device approved by the department in accordance with s. 316.1938 for at least 6 continuous months upon all vehicles that are individually or jointly leased or owned and routinely operated by the convicted person if, at the time of the offense, the person had a blood-alcohol level or breath-alcohol level of .08 or higher.

(4)   Any person who is convicted of a violation of subsection (1) and who has a blood-alcohol level or breath-alcohol level of 0.15 or higher, or any person who is convicted of a violation of subsection (1) and who at the time of the offense was accompanied in the vehicle by a person under the age of 18 years, shall be punished:

(a)   By a fine of:

1.   Not less than $1,000 or more than $2,000 for a first conviction.

2.   Not less than $2,000 or more than $4,000 for a second conviction.

3.   Not less than $4,000 for a third or subsequent conviction.

(b)   By imprisonment for:

1.   Not more than 9 months for a first conviction.

2.   Not more than 12 months for a second conviction.

For the purposes of this subsection, only the instant offense is required to be a violation of subsection (1) by a person who has a blood-alcohol level or breath-alcohol level of 0.15 or higher.

The portion of a fine imposed in excess of $1,000 pursuant to sub-subparagraph (a)1. and the portion of a fine imposed in excess of $2,000 pursuant to sub-subparagraph (a)2. or (a)3, shall be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund.

21
CODING: Words stricken are deletions; words underlined are additions.

(c)   In addition to the penalties in paragraphs (a) and (b), the court shall order the mandatory placement, at the convicted person's sole expense, of an ignition interlock device approved by the department in accordance with s. 316.1938 upon all vehicles that are individually or jointly leased or owned and routinely operated by the convicted person for not less than 6 continuous months for the first offense and for not less than 2 continuous years for a second offense, when the convicted person qualifies for a permanent or restricted license.

Section 16.   Effective upon this act becoming a law and retroactive to July 1, 2008, paragraph (b) of subsection (10) of section 318.14, Florida Statutes, is amended to read:

318.14   Noncriminal traffic infractions; exception; procedures.—

(10)

(b)   Any person cited for an offense listed in this subsection shall present proof of compliance before the scheduled court appearance date. For the purposes of this subsection, proof of compliance shall consist of a valid, renewed, or reinstated driver license or registration certificate and proper proof of maintenance of security as required by s. 316.646. Notwithstanding waiver of fine, any person establishing proof of compliance shall be assessed court costs of $25, except that a person charged with violation of s. 316.646(1)-(3) may be assessed court costs of $8. One dollar of such costs shall be remitted to the Department of Revenue for deposit into the Child Welfare Training Trust Fund of the Department of Children and Families. One dollar of such costs shall be distributed to the Department of Juvenile Justice for deposit into the Juvenile Justice Training Trust Fund. Fourteen dollars of such costs shall be distributed to the municipality, $1 shall be remitted to the Department of Revenue for deposit into the General Revenue Fund and $ 8 9 shall be deposited by the clerk of the court into the fine and forfeiture fund established pursuant to s. 142.01, if the offense was committed within the municipality. If the offense was committed in an unincorporated area of a county or if the citation was for a violation of s. 316.646(1)-(3), the entire amount shall be deposited by the clerk of the court into the fine and forfeiture fund established pursuant to s. 142.01, except for the moneys to be deposited into the Child Welfare Training Trust Fund and the Juvenile Justice Training Trust Fund and $3 which the clerk shall remit to the Department of Revenue for deposit into the General Revenue Fund. This subsection does not authorize the operation of a vehicle without a valid driver license, without a valid vehicle tag and registration, or without the maintenance of required security.

Section 17.   Effective upon this act becoming a law and retroactive to July 1, 2008, paragraph (b) of subsection (1) of section 318.15, Florida Statutes, is amended to read:

318.15   Failure to comply with civil penalty or to appear; penalty.—

CODING: Words stricken are deletions; words underlined are additions.

(1)

(b)   However, a person who elects to attend driver improvement school and has paid the civil penalty as provided in s. 318.14(9) but who subsequently fails to attend the driver improvement school within the time specified by the court is deemed to have admitted the infraction and shall be adjudicated guilty. If the person received a 9-percent reduction pursuant to s. 318.14(9), the person must pay the clerk of the court that amount and a processing fee of up to $18, from which the clerk shall remit $3 to the Department of Revenue for deposit into the General Revenue Fund, after which additional penalties, court costs, or surcharges may not be imposed for the violation. In all other such cases, the person must pay the clerk a processing fee of up to $18, from which the clerk shall remit $3 to the Department of Revenue for deposit into the General Revenue Fund, after which additional penalties, court costs, or surcharges may not be imposed for the violation. The clerk of the court shall notify the department of the person's failure to attend driver improvement school and points shall be assessed pursuant to s. 322.27.

Section 18.   Effective upon this act becoming a law and retroactive to July 1, 2008, paragraphs (b) and (c) of subsection (2), paragraph (a) of subsection (11), and subsection (18) of section 318.18, Florida Statutes, are amended to read:

318.18   Amount of penalties.—The penalties required for a noncriminal disposition pursuant to s. 318.14 or a criminal offense listed in s. 318.17 are as follows:

(2)   Thirty dollars for all nonmoving traffic violations and:

(b)   For all violations of ss. 320.0605, 320.07(1), 322.065, and 322.15(1). Any person who is cited for a violation of s. 320.07(1) shall be charged a delinquent fee pursuant to s. 320.07(4).

1.   If a person who is cited for a violation of s. 320.0605 or s. 320.07 can show proof of having a valid registration at the time of arrest, the clerk of the court may dismiss the case and may assess a dismissal fee of up to $10, from which the clerk shall remit $2.50 to the Department of Revenue for deposit into the General Revenue Fund. A person who finds it impossible or impractical to obtain a valid registration certificate must submit an affidavit detailing the reasons for the impossibility or impracticality. The reasons may include, but are not limited to, the fact that the vehicle was sold, stolen, or destroyed; that the state in which the vehicle is registered does not issue a certificate of registration; or that the vehicle is owned by another person.

2.   If a person who is cited for a violation of s. 322.03, s. 322.065, or s. 322.15 can show a driver license issued to him or her and valid at the time of arrest, the clerk of the court may dismiss the case and may assess a dismissal fee of up to $10, from which the clerk shall remit $2.50 to the Department of Revenue for deposit into the General Revenue Fund.

CODING: Words stricken are deletions; words underlined are additions.

3.   If a person who is cited for a violation of s. 316.646 can show proof of security as required by s. 627.733, issued to the person and valid at the time of arrest, the clerk of the court may dismiss the case and may assess a dismissal fee of up to $10, from which the clerk shall remit $2.50 to the Department of Revenue for deposit into the General Revenue Fund. A person who finds it impossible or impractical to obtain proof of security must submit an affidavit detailing the reasons for the impracticality. The reasons may include, but are not limited to, the fact that the vehicle has since been sold, stolen, or destroyed; that the owner or registrant of the vehicle is not required by s. 627.733 to maintain personal injury protection insurance; or that the vehicle is owned by another person.

(c)   For all violations of ss. 316.2935 and 316.610. However, for a violation of s. 316.2935 or s. 316.610, if the person committing the violation corrects the defect and obtains proof of such timely repair by an affidavit of compliance executed by the law enforcement agency within 30 days from the date upon which the traffic citation was issued, and pays $4 to the law enforcement agency, thereby completing the affidavit of compliance, then upon presentation of said affidavit by the defendant to the clerk within the 30-day time period set forth under s. 318.14(4), the fine must be reduced to $10, which the clerk of the court shall retain and from which the clerk shall remit $2.50 to the Department of Revenue for deposit into the General Revenue Fund.

(11)(a)   In addition to the stated fine, court costs must be paid in the following amounts and shall be deposited by the clerk into the fine and forfeiture fund established pursuant to s. 142.01 except as provided in this paragraph:

For pedestrian infractions   $4, from which the clerk shall remit $1 to the Department of Revenue for deposit into the General Revenue Fund.

For nonmoving traffic infractions   $18, from which the clerk shall remit $2 to the Department of Revenue for deposit into the General Revenue Fund.

For moving traffic infractions   $35, from which the clerk shall remit $5 to the Department of Revenue for deposit into the General Revenue Fund.

(18)   In addition to any penalties imposed, an administrative fee of $12.50 must be paid for all noncriminal moving and nonmoving violations under chapters 316, 320, and 322. The clerk shall remit the administrative fee to the Department of Revenue for deposit into the General Revenue Fund. Revenue from the administrative fee shall be deposited by the clerk of court into the fine and forfeiture fund established pursuant to s. 142.01.

Section 19.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsections (1) and (2) of section 322.245, Florida Statutes, are amended to read:

CODING: Words stricken are deletions; words underlined are additions.

322.245 Suspension of license upon failure of person charged with specified offense under chapter 316, chapter 320, or this chapter to comply with directives ordered by traffic court or upon failure to pay child support in non-IV-D cases as provided in chapter 61 or failure to pay any financial obligation in any other criminal case.—

(1) If a person charged with a violation of any of the criminal offenses enumerated in s. 318.17 or with the commission of any offense constituting a misdemeanor under chapter 320 or this chapter fails to comply with all of the directives of the court within the time allotted by the court, the clerk of the traffic court shall mail to the person, at the address specified on the uniform traffic citation, a notice of such failure, notifying him or her that, if he or she does not comply with the directives of the court within 30 days after the date of the notice and pay a delinquency fee of up to $25 to the clerk, from which the clerk shall remit $10 to the Department of Revenue for deposit into the General Revenue Fund, his or her driver license will be suspended. The notice shall be mailed no later than 5 days after such failure. The delinquency fee may be retained by the office of the clerk to defray the operating costs of the office.

(2) In non-IV-D cases, if a person fails to pay child support under chapter 61 and the obligee so requests, the depository or the clerk of the court shall mail in accordance with s. 61.13016 the notice specified in that section, notifying him or her that if he or she does not comply with the requirements of that section and pay a delinquency fee of $25 to the depository or the clerk, his or her driver license and motor vehicle registration will be suspended. The delinquency fee may be retained by the depository or the office of the clerk to defray the operating costs of the office after the clerk remits $15 to the Department of Revenue for deposit into the General Revenue Fund.

Section 20.    Effective upon this act becoming a law and retroactive to July 1, 2008, subsections (2) and (4) of section 327.35, Florida Statutes, are amended to read:

327.35    Boating under the influence; penalties; "designated drivers."—

(2)(a)    Except as provided in paragraph (b), subsection (3), or subsection (4), any person who is convicted of a violation of subsection (1) shall be punished:

1.    By a fine of:

a.    Not less than $500 or more than $1,000 for a first conviction.

b.    Not less than $1,000 or more than $2,000 for a second conviction; and

2.    By imprisonment for:

a.    Not more than 6 months for a first conviction.

b.    Not more than 9 months for a second conviction.

25
CODING: Words stricken are deletions; words underlined are additions.

The portion of a fine imposed in excess of $500 pursuant to sub-subparagraph 1.a. and the portion of a fine imposed in excess of $1,000 pursuant to sub-subparagraph 1.b., shall be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund.

(b)1.   Any person who is convicted of a third violation of this section for an offense that occurs within 10 years after a prior conviction for a violation of this section commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

2.   Any person who is convicted of a third violation of this section for an offense that occurs more than 10 years after the date of a prior conviction for a violation of this section shall be punished by a fine of not less than $2,000 or more than $5,000 and by imprisonment for not more than 12 months. The portion of a fine imposed in excess of $2,500 pursuant to this subparagraph shall be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund.

3.   Any person who is convicted of a fourth or subsequent violation of this section, regardless of when any prior conviction for a violation of this section occurred, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

However, the fine imposed for such fourth or subsequent violation may not be less than $2,000. The portion of such fine imposed in excess of $1,000 shall be remitted by the clerk to the Department of Revenue for deposit into the General Revenue Fund.

(4)   Any person who is convicted of a violation of subsection (1) and who has a blood-alcohol level or breath-alcohol level of 0.15 or higher, or any person who is convicted of a violation of subsection (1) and who at the time of the offense was accompanied in the vessel by a person under the age of 18 years, shall be punished:

(a)   By a fine of:

1.   Not less than $1,000 or more than $2,000 for a first conviction.

2.   Not less than $2,000 or more than $4,000 for a second conviction.

3.   Not less than $4,000 for a third or subsequent conviction.

(b)   By imprisonment for:

1.   Not more than 9 months for a first conviction.

2.   Not more than 12 months for a second conviction.

The portion of a fine imposed in excess of $1,000 pursuant to subparagraph (a)1. and the portion of a fine imposed in excess of $2,000 pursuant to subparagraph (a)2. or subparagraph (a)3., shall be remitted by the clerk to

CODING: Words stricken are deletions; words underlined are additions.

the Department of Revenue for deposit into the General Revenue Fund. For the purposes of this subsection, only the instant offense is required to be a violation of subsection (1) by a person who has a blood-alcohol level or breath-alcohol level of 0.15 or higher.

Section 21.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (4), paragraph (a) of subsection (9), and paragraph (a) of subsection (11) of section 327.73, Florida Statutes, are amended to read:

327.73   Noncriminal infractions.—

(4)   Any person charged with a noncriminal infraction under this section may:

(a)   Pay the civil penalty, either by mail or in person, within 30 days of the date of receiving the citation; or,

(b)   If he or she has posted bond, forfeit bond by not appearing at the designated time and location.

If the person cited follows either of the above procedures, he or she shall be deemed to have admitted the noncriminal infraction and to have waived the right to a hearing on the issue of commission of the infraction. Such admission shall not be used as evidence in any other proceedings. If a person who is cited for a violation of s. 327.395 can show a boating safety identification card issued to that person and valid at the time of the citation, the clerk of the court may dismiss the case and may assess a dismissal fee of up to $10, from which the clerk shall remit $2.50 to the Department of Revenue for deposit into the General Revenue Fund. If a person who is cited for a violation of s. 328.72(13) can show proof of having a registration for that vessel which was valid at the time of the citation, the clerk may dismiss the case and may assess the dismissal fee, from which the clerk shall remit $2.50 to the Department of Revenue for deposit into the General Revenue Fund.

(9)(a)   Any person who fails to comply with the court's requirements or who fails to pay the civil penalties specified in this section within the 30-day period provided for in s. 327.72 must pay an additional court cost of up to $20, which shall be used by the clerks of the courts to defray the costs of tracking unpaid uniform boating citations, from which the clerk shall remit $2 to the Department of Revenue for deposit into the General Revenue Fund.

(11)(a)   Court costs that are to be in addition to the stated civil penalty shall be imposed by the court in an amount not less than the following:

1.   For swimming or diving infractions, $4, from which the clerk shall remit $1 to the Department of Revenue for deposit into the General Revenue Fund.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

2. For nonmoving boating infractions, $18, from which the clerk shall remit $12 to the Department of Revenue for deposit into the General Revenue Fund.

3. For boating infractions listed in s. 327.731(1), $35, from which the clerk shall remit $25 to the Department of Revenue for deposit into the General Revenue Fund.

Court costs imposed under this subsection may not exceed $45. A criminal justice selection center or both local criminal justice access and assessment centers may be funded from these court costs.

Section 22.   Effective upon this act becoming a law and retroactive to July 1, 2008, paragraph (i) of subsection (1) of section 379.401, Florida Statutes, is amended to read:

379.401   Penalties and violations; civil penalties for noncriminal infractions; criminal penalties; suspension and forfeiture of licenses and permits.

(1)   LEVEL ONE VIOLATIONS.—

(i)   A person cited for violating the requirements of s. 379.354 relating to personal possession of a license or permit may not be convicted if, before or at the time of a county court hearing, the person produces the required license or permit for verification by the hearing officer or the court clerk. The license or permit must have been valid at the time the person was cited. The clerk or hearing officer may assess a $10 fee for costs under this paragraph, from which the clerk shall remit $5 to the Department of Revenue for deposit into the General Revenue Fund.

Section 23.   Notwithstanding subsection (13) of section 627.7152, as created by HB 7065, 2019 Regular Session, subsection (10) of that section is effective upon becoming a law.

Section 24.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (1) of section 713.24, Florida Statutes, is amended to read:

713.24   Transfer of liens to security.—

(1)   Any lien claimed under this part may be transferred, by any person having an interest in the real property upon which the lien is imposed or the contract under which the lien is claimed, from such real property to other security by either:

(a)   Depositing in the clerk's office a sum of money, or

(b)   Filing in the clerk's office a bond executed as surety by a surety insurer licensed to do business in this state,

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

either to be in an amount equal to the amount demanded in such claim of lien, plus interest thereon at the legal rate for 3 years, plus $1,000 or 25 percent of the amount demanded in the claim of lien, whichever is greater, to apply on any attorney's fees and court costs that may be taxed in any proceeding to enforce said lien. Such deposit or bond shall be conditioned to pay any judgment or decree which may be rendered for the satisfaction of the lien for which such claim of lien was recorded. Upon making such deposit or filing such bond, the clerk shall make and record a certificate showing the transfer of the lien from the real property to the security and shall mail a copy thereof by registered or certified mail to the lienor named in the claim of lien so transferred, at the address stated therein. Upon filing the certificate of transfer, the real property shall thereupon be released from the lien claimed, and such lien shall be transferred to said security. In the absence of allegations of privity between the lienor and the owner, and subject to any order of the court increasing the amount required for the lien transfer deposit or bond, no other judgment or decree to pay money may be entered by the court against the owner. The clerk shall be entitled to a service charge for making and serving the certificate, in the amount of up to $20, from which the clerk shall remit $5 to the Department of Revenue for deposit into the General Revenue Fund. If the transaction involves the transfer of multiple liens, an additional charge of up to $10 for each additional lien shall be charged, from which the clerk shall remit $2.50 to the Department of Revenue for deposit into the General Revenue Fund. For recording the certificate and approving the bond, the clerk shall receive her or his usual statutory service charges as prescribed in s. 28.24. Any number of liens may be transferred to one such security.

Section 25.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (3) of section 721.83, Florida Statutes, is amended to read:

721.83   Consolidation of judicial foreclosure actions.—

(3)   A consolidated timeshare foreclosure action shall be considered a single action, suit, or proceeding for the payment of filing fees and service charges pursuant to general law. In addition to the payment of such filing fees and service charges, an additional filing fee of up to $10 from which the clerk shall remit $5 to the Department of Revenue for deposit into the General Revenue Fund for each timeshare interest joined in that action shall be paid to the clerk of court.

Section 26.   Effective upon this act becoming a law and retroactive to July 1, 2008, paragraph (a) of subsection (6) of section 744.365, Florida Statutes, is amended to read:

744.365   Verified inventory.—

(6)   AUDIT FEE.—

CODING: Words stricken are deletions; words underlined are additions.

(a)  Where the value of the ward's property exceeds $25,000, a guardian shall pay from the ward's property to the clerk of the circuit court a fee of up to $85 <u>from which the clerk shall remit $10 to the Department of Revenue for deposit into the General Revenue Fund</u>, upon the filing of the verified inventory, for the auditing of the inventory. Upon petition by the guardian, the court may waive the auditing fee upon a showing of insufficient funds in the ward's estate. Any guardian unable to pay the auditing fee may petition the court for waiver of the fee. The court may waive the fee after it has reviewed the documentation filed by the guardian in support of the waiver.

Section 27.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (4) of section 744.3678, Florida Statutes, is amended to read:

744.3678   Annual accounting.—

(4)   The guardian shall pay from the ward's estate to the clerk of the circuit court a fee based upon the following graduated fee schedule, upon the filing of the annual financial return, for the auditing of the return:

(a)   For estates with a value of $25,000 or less the clerk of the court may charge a fee of up to $20 <u>from which the clerk shall remit $5 to the Department of Revenue for deposit into the General Revenue Fund</u>.

(b)   For estates with a value of more than $25,000 up to and including $100,000 the clerk of the court may charge a fee of up to $85 <u>from which the clerk shall remit $10 to the Department of Revenue for deposit into the General Revenue Fund</u>.

(c)   For estates with a value of more than $100,000 up to and including $500,000 the clerk of the court may charge a fee of up to $170 <u>from which the clerk shall remit $20 to the Department of Revenue for deposit into the General Revenue Fund</u>.

(d)   For estates with a value in excess of $500,000 the clerk of the court may charge a fee of up to $250 <u>from which the clerk shall remit $25 to the Department of Revenue for deposit into the General Revenue Fund</u>.

Upon petition by the guardian, the court may waive the auditing fee upon a showing of insufficient funds in the ward's estate. Any guardian unable to pay the auditing fee may petition the court for a waiver of the fee. The court may waive the fee after it has reviewed the documentation filed by the guardian in support of the waiver.

Section 28.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (2) of section 766.104, Florida Statutes, is amended to read:

766.104   Medical negligence cases; reasonable investigation required before filing.—

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(2)   Upon petition to the clerk of the court where the suit will be filed and payment to the clerk of a filing fee, not to exceed $42 <u>from which the clerk shall remit $4.50 to the Department of Revenue for deposit into the General Revenue Fund</u>, an automatic 90-day extension of the statute of limitations shall be granted to allow the reasonable investigation required by subsection (1). This period shall be in addition to other tolling periods. No court order is required for the extension to be effective. The provisions of this subsection shall not be deemed to revive a cause of action on which the statute of limitations has run.

Section 29.   Effective upon this act becoming a law and retroactive to July 1, 2008, subsection (1) of section 938.05, Florida Statutes, is amended to read:

938.05   Additional court costs for felonies, misdemeanors, and criminal traffic offenses.—

(1)   Any person pleading nolo contendere to a misdemeanor or criminal traffic offense under s. 318.14(10)(a) or pleading guilty or nolo contendere to, or being found guilty of, any felony, misdemeanor, or criminal traffic offense under the laws of this state or the violation of any municipal or county ordinance which adopts by reference any misdemeanor under state law, shall pay as a cost in the case, in addition to any other cost required to be imposed by law, a sum in accordance with the following schedule:

(a)   Felonies $225 <u>from which the clerk shall remit $25 to the Department of Revenue for deposit into the General Revenue Fund</u>

(b)   Misdemeanors $60 <u>from which the clerk shall remit $10 to the Department of Revenue for deposit into the General Revenue Fund</u>

(c)   Criminal traffic offenses $60 <u>from which the clerk shall remit $10 to the Department of Revenue for deposit into the General Revenue Fund</u>

Section 30.   <u>The amendments made by this act to ss. 27.52, 28.24, 28.2401, 28.241, 34.041, 45.035, 55.505, 61.14, 316.193, 318.14, 318.15, 318.18, 322.245, 327.35, 327.73, 379.401, 713.24, 721.83, 744.365, 744.3678, 766.104, and 938.05, Florida Statutes, are remedial and clarifying in nature and apply retroactively to July 1, 2008.</u>

Section 31.   <u>The amendments to the jurisdiction of a court made by this act shall apply with respect to the date of filing the cause of action, regardless of when the cause of action accrued.</u>

Section 32.   <u>Before the 2022 Regular Session of the Legislature, the Legislature shall review and consider the results of the analysis submitted pursuant to Specific Appropriation 2754 of the 2019-2020 General Appropriations Act regarding the review of the Clerk of Court Processes for the purpose of considering the extension or reenactment of provisions in this act relating to clerk funding.</u>

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

Section 33. Except as otherwise provided, and except for this section, which shall take effect upon becoming a law, this act shall take effect July 1, 2019.

Approved by the Governor May 24, 2019.

Filed in Office Secretary of State May 24, 2019.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

KDH ARCHITECTURE, INC. a/a/o 921
EVERGREEN DRIVE and 730
WHITEMORE, LLC,

       Plaintiff,               CASE NO.: 50-2019-CA-010125-XXXX-MB

vs.

WESTERN WORLD
INSURANCE COMPANY,

       Defendant.

_____/

**DEFENDANT'S NOTICE OF SERVING PROPOSAL FOR SETTLEMENT/
OFFER OF JUDGMENT TO PLAINTIFF,
KDH ARCHITECTURE, INC.**

Defendant, WESTERN WORLD INSURANCE COMPANY, by and through its undersigned counsel, and hereby provides notice that on November 8, 2019, it served a Proposal for Settlement/Offer of Judgment upon the Plaintiff, KDH ARCHITECTURE, INC., pursuant to Florida Statute §768.79 and Florida Rule of Civil Procedure 1.442.

**[THIS SECTION INTENTIONALLY LEFT BLANK]**

BUTLER WEIHMULLER KATZ CRAIG LLP

*[signature]*

TROY J. SEIBERT, ESQ.
Florida Bar No.:  0084668
tseibert@butler.legal
MAXWELL H. STAPE, ESQ.
Florida Bar No.:  1007734
mstape@butler.legal
Secondary:   msmalls@butler.legal
                     vfernandez@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
*Attorneys for Defendant,*
*Western World Insurance Company*


## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to

Kimesha S. Smith, Esq.
Insurance Litigation Group, P.A.
1500 NE 162nd Street
Miami, FL 33162
Serrvice@ILGPA.com
*Attorney for Plaintiff,*
*Kdh Architecture, Inc. a/a/o 921*
*Evergreen Drive and 730*
*Whitemore, LLC*

by E-Portal on November 8, 2019.

*[signature]*

MAXWELL H. STAPE, ESQ.

2

IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.: 50-2019-CA-010125

KDH ARCHITECTURE INC. a/a/o 921 EVERGREEN
DRIVE AND 730 WHITEMORE, LLC
    *Plaintiff,*

v.

WESTERN WORLD INSURANCE COMPANY,
    *Defendant.*
_____/

## PLAINTIFF'S NOTICE OF FILING JURAT PAGE

Plaintiff, KDH Architecture Inc. A/A/O Evergreen Drive and 730 Whitemore, LLC, by

and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.340, hereby

serves Notice of Filing Jurat Page.

## CERTIFICATE OF SERVICE

I CERTIFY that the foregoing document is being served on November 13, 2019, via an

automatic email generated by the Florida Courts E-Filing Portal to: Troy Seibert, Esq., Butler

Weihmuller Katz Craig LLP (tseibert@butler.legal, knelson@butler.legal, msmalls@butler.legal).

INSURANCE LITIGATION GROUP, P.A.
Attorney for Plaintiff
1500 NE 162nd Street
Miami, Florida 33162
Telephone:    (786) 529-0090
Facsimile:    (866) 239-9520
E-Mail: service@ilgpa.com

By:    */s/ Faith D. Everett,*
    FAITH D. EVERETT, ESQ.
    FL Bar No. 96339

KDH ARCHITECTURE, INC.,

By: _Kenneth Hecht_

Print Name: KENNETH Hecht

Title: PRESIDENT

## **ACKNOWLEDGMENT**

STATE OF FLORIDA

COUNTY OF _Palm Beach_

BEFORE ME, the undersigned authority, personally appeared _Kenneth Hecht_ on behalf of KDH ARCHITECTURE, INC., who is personally known to me **OR** who has produced _FL Driver License_ * as identification, and who, after first being duly sworn, deposes and says that he/she has read the foregoing Answers to Second Interrogatories which were propounded to him/her by the ~~Plaintiff~~ and to the best of his/her knowledge and belief are true and correct.


SWORN TO AND SUBSCRIBED before me, this _09th_ day of _November_, 2019.

*List type of identification produced or "N/A," whichever is applicable.*


(SEAL)

Notary Public State of Florida
Jean Rooldy Beraud
My Commission GG 028599
Expires 09/11/2020

_____
NOTARY PUBLIC

State of _Florida_ at Large

My Commission Expires: _09/11/2020_

8